580 So.2d 254 (1991)
John REYNOLDS, Appellant,
v.
STATE of Florida, Appellee.
No. 89-2668.
District Court of Appeal of Florida, First District.
May 13, 1991.
Rehearing Denied July 12, 1991.
*255 Barbara M. Linthicum, Public Defender, and Lynn A. Williams, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Virlindia Doss, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
John Reynolds appeals a final judgment adjudicating him guilty of four counts of sexual battery and one count of burglary of a dwelling with assault. He was sentenced as a habitual felony offender to concurrent terms of life in prison. Reynolds raises nine issues on this appeal.
Reynolds is a black man; the alleged victim is a white woman. Reynolds contends that the prosecutor's repeated references to race during trial, suggesting that white women are not safe from Reynolds and that consensual relations between a white woman and a black man are not allowed, deprived him of a fair trial and due process of law in contravention of Article I, Section 9, of the Florida Constitution, and Amendments V, VI, and XIV of the United States Constitution. The defendant's attorney failed to make contemporaneous objections to the prosecutor's statements at any point in the trial, and the state argues that this issue is not properly preserved for appellate review due to the lack of timely objections. But even if this issue is reviewable, the state further argues, the prosecutor's statements were legitimate questions and comments on the evidence because they were relevant to Reynolds's defense of consent; that is, relevant to prove that the victim did not consent to having sexual intercourse with Reynolds.
As we view it, the controlling issue is whether the subject statements injecting the race issue were so egregious and pervasive that they constitute fundamental error, i.e., that "neither rebuke nor retraction will destroy their influence, and a new trial should be granted despite the absence of an objection or even in the presence of a rebuke by the trial judge." Robinson v. State, 520 So.2d 1, 7 (Fla. 1988). We hold, for the reasons discussed below, that the prosecutor's comments meet the applicable test for fundamental error and reverse for a new trial.
The prosecutor's references to race at trial were not isolated but appeared throughout the entire trial. The prosecutor's focus on the difference in race between the defendant and the victim began with the voir dire examination of potential jurors, appeared in the state's opening statement and during examination of witnesses, and was relied on in closing argument. The following are examples. During the jury selection proceedings, the prosecutor stated:
Ladies and gentlemen, as you have probably become well aware, the Defendant in this trial is a black male; the alleged victim is a white female. Are there any of you who have either dated, married, had any kind of relationship with a person of the black race? Any of you? (No answer) Are there any of you who have a child or relation who has been or is in those circumstances?[1]
During opening argument, the prosecutor stated:
He did not pull a gun, ladies and gentlemen, and I don't know that there will ever be any evidence that he really had a gun, but he told her  this black man standing in her apartment when she came down the hall, he told her he had a gun... .
*256 During his examination of the victim and other witnesses, the prosecutor inquired whether the victim ever "dated a black boy or black man before," whether the victim "ever consensually had any kind of relations with a black man", whether the victim was "ever known to consort with black men or boys," and whether the victim ever "fought a black man before."[2] During closing argument, among other things, the prosecutor stated:
Ladies and gentlemen, the question is not whether he had a gun, but whether [F.L.] feared John Reynolds, whether she feared a black man who had appeared in her apartment without her invitation... .
* * * * * *
I want you to think about how embarrassing it is for an 18-year old white girl from Crestview to admit she was raped by a black man. It is humiliating.
* * * * * *
If you're going to believe John Reynolds' defense, you have to believe that in two short casual conversations and one phone call, that this man was able to win over the romantic affection of an 18-year old white girl from Crestview. You heard her, she is intelligent, she is articulate, she is from a family of educators. You saw her ex-husband. That is the kind of man she is attracted to. He is intelligent, he is articulate, he is attractive, and he is white. And you heard the Defendant, ... when he testified, and in the first few minutes of his testimony you knew that it was not and could not be the truth that she was attracted to him.
Despite Reynolds's failure to contemporaneously object, we conclude that the prosecutor's racial comments, which focused on the crucial issue of consent and improperly injected the issue of race into the prosecution, were so egregious and so pervasive that Reynolds was deprived of his right to a fair trial. Similar comments have been held to constitute fundamental error requiring automatic reversal where they so infected the trial with racial prejudice and unfairness as to deny the defendant due process of law. See, e.g., Miller v. State of North Carolina, 583 F.2d 701, 703-704 (4th Cir.1978) (rape convictions reversed where prosecutor's summation, without any objection from the defense, included references to the defendants as "these black men" and statements that a defense based on consent was inherently untenable because no white woman would ever consent to having sexual relations with a black man, "so infected the trial with unfairness as to deny the defendants due process of law.");[3]United States ex rel. Haynes v. McKendrick, 350 F. Supp. 990, 998-1005 (S.D.New York 1972), affirmed, 481 F.2d 152 (2d Cir.1973) (in robbery prosecution, prosecutor's overt racial remarks during closing, without objection, maligning defendants' race and inviting the jury to view black people as a whole and the defendants in particular as members of a group that was not really a part of the same community as the jury were prejudicial and denied defendants the right to a fair trial; "[t]he net psychological effect was to divide the courtroom along racial lines, the white jury on one side sitting in judgment of the black community and these black defendants on the other side");[4]Kelly v. Stone, 514 F.2d 18, 19 (9th Cir.1975), (cumulative effect of improper comments by prosecutor, including statement that "maybe the next time it won't be a little black girl from the other *257 side of the tracks," denied defendant, a black male in a forcible rape case, a fair trial; the comments "constituted a highly inflammatory and wholly impermissible appeal to racial prejudice"). See also United States v. Doe, 903 F.2d 16 (D.C. Cir.1990).
The applicability of the doctrine of fundamental error under these circumstances presents a question of great public importance, so we certify the following question to the supreme court:
WHETHER, IN A SEXUAL BATTERY PROSECUTION INVOLVING THE DEFENSE OF CONSENT BETWEEN A BLACK DEFENDANT AND A WHITE VICTIM, A PROSECUTOR'S INJECTION DURING VOIR DIRE EXAMINATION OF POTENTIAL JURORS, OPENING STATEMENT, EXAMINATION OF WITNESSES, AND CLOSING ARGUMENT, OF THE DEFENDANT'S AND THE VICTIM'S DIFFERING RACE CONSTITUTES A VIOLATION OF THE DEFENDANT'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW THAT CAN BE TREATED AS FUNDAMENTAL ERROR BECAUSE THE DEFENDANT FAILED TO OBJECT TO THOSE COMMENTS AND MOVE FOR A MISTRIAL.
Reynolds also contends that the circuit court erred in sentencing him as a habitual felony offender because the prior felony convictions upon which the court relied were all entered on the same date. The sentencing transcript and the state's notice to seek sentencing under section 775.084 confirm that fact. Therefore, the habitual offender sentence must be vacated on the authority of Barnes v. State, 576 So.2d 758, 759-60 (Fla. 1st DCA 1991). In view of this ruling, we find it unnecessary to consider Reynolds's eighth point challenging the constitutional validity of the habitual offender statute.
Reynolds next contends that the circuit court erred in denying him credit against his sentence for all the time he spent in jail prior to sentencing in this case. While the state concedes that such credit appears to be statutorily mandated by section 921.16(1), it argues that remand for resentencing is unnecessary because Reynolds was sentenced as a habitual offender under 775.084 to a life sentence. Because the cause is remanded for a new trial, we need not further discuss this point.
Reynolds's remaining points on appeal[5] are without merit and warrant no further discussion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR NEW TRIAL.
JOANOS and ZEHMER, JJ., and CAWTHON, Senior Judge, concur.
NOTES
[1] The substance and context of these questions suggests that the jury panel being questioned was all white; however, we were unable to verify on this record whether that was so.
[2] The prosecutor also inquired of witnesses whether Reynolds was ever seen "dating or consorting with a white girl" or had any "romantic relationship with any white girl."
[3] In Miller, the court stated that: "Where the jury is exposed to highly prejudicial argument by the prosecutor's calculated resort to racial prejudice on an issue as sensitive as consent to sexual intercourse in a prosecution for rape, we think that the prejudice engendered is so great that automatic reversal is required. In such a case, the impartiality of the jury as a fact-finder is fatally compromised." 583 F.2d at 708.
[4] Affirming the district court's opinion, the second circuit added that: "the purpose and spirit of the fourteenth amendment requires that prosecutions in state courts be free of racially prejudicial slurs. The standard for state prosecution in this regard is thus as high as the rigorous standard required of the federal courts by the fifth amendment's due process clause." 481 F.2d at 159.
[5] The points are:

II. Whether appellant's convictions for two separate counts of sexual battery both based on digital penetration of the victim during a single attack violates the double jeopardy and due process clauses of the state and federal constitutions.
III. Whether the trial court erred in disallowing the testimony of Jessie Clark, a defense witness.
IV. Whether the testimony of Tyrone Seals and Marty Hurst was improper rebuttal testimony.
V. Whether the trial court erred in admitting into evidence a photograph of the complainant's daughter.
VI. Whether the trial court erred in allowing the state to introduce evidence of a collateral act, since the sole relevancy was to show propensity to commit crime and the evidence was irrelevant to the issues at trial, in contravention of Article I, section 9 of the Florida Constitution and Amendments V and XIV of the United States Constitution.