689 So.2d 306 (1997)
Leonardo PEREZ and Ivan Rodriguez, Appellants,
v.
The STATE of Florida, Appellee.
Nos. 96-619, 96-603.
District Court of Appeal of Florida, Third District.
January 22, 1997.
Rehearing Denied March 19, 1997.
Bennett H. Brummer, Public Defender and Andrew M. Teschner, Special Assistant Public Defender, for appellants.
Robert A. Butterworth, Attorney General and Douglas J. Glaid, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and NESBITT and FLETCHER, JJ.
SCHWARTZ, Chief Judge.
As a result of a melee in the multi-inmate Dade County jail cell where they were prisoners, the defendant-appellants were each found guilty of the improper exhibition of a weapon (a homemade knife called a "shank") and aggravated assault on a corrections officer. We are compelled to reverse the convictions because of improprieties in the prosecutor's final argument.
The appellants point to many instances of alleged prosecutorial misconduct, at least several of which seem well-founded.[1] For present purposes, however, we need only *307 consider two. Although there was no evidence whatever of any racial factor which contributed to the incident in question, the Assistant State Attorney argued:
It's a war in that jail and it is not just a war between the Corrections officers and the inmates, because they're there to keep the peace, it's a war between the inmates themselves.
* * * * * *
And the sad thing and the most disturbing thing is that this is a war that's divided along racial lines, and Leonardo Perez and Ivan Rodriguez are part of that war. [e.s.]

* * * * * *
Later, referring initially to the testimony of an inmate who testified for the defense, she stated:
He was able to recite verbatim the racial make up of every cell, down to whoone person was Italian, [one] person was Anglo; I've got 7 Hispanics, we've got 7 blacks, down to a "T" what is the type of person. Who is the type of person who thinks like that? That's what you have to ask yourself.

These are the type of people who think like that. Leonardo Perez and Ivan Rodriguez, they think like that. They think in terms of what's theirs. They think in terms of their territory. And it doesn't matter whether it is a Corrections officer stepping in on that territory, they're not going to allow it to happen, and they weren't going to allow it to happen this day. [e.s.]
The inflammatory and prejudicial (in all the senses of the word) effect of these remarks can hardly be overstated.
1. It is, of course, highly improper to interject even a reference to, let alone an accusation of racism which is neither justified by the evidence nor relevant to the issues into any part of our judicial system. It is particularly reprehensible when this is done by a representative of the state in a criminal prosecution. See generally Gluck v. State, 62 So.2d 71 (Fla.1952); Reynolds v. State, 580 So.2d 254 (Fla. 1st DCA 1991). The argument that the defendants were directly involved in a "war that's divided along racial lines" carried that impropriety to its height.
2. The same observations are applicable to the second quoted portion of the argument which not only labeled the witness a racist, but projected that characteristic onto the defendants. Because our system treats persons on their own individual merits, it is always wrong to call witnesses or defendants names by citing them as examples of a criminal "type." As we said in Green v. State, 427 So.2d 1036, 1038 (Fla. 3d DCA 1983), review denied, 438 So.2d 834 (Fla. 1983):
The "typifications" of the appellant were not the testimony of the witness but rather were the prosecutor's own prejudicial characterizations. It is improper in the prosecution of persons charged with a crime for the representative of the state to apply offensive epithets to defendants or their witnesses, and to engage in vituperative characterizations of them. There is no reason, under any circumstances, at any time for a prosecuting attorney to be rude to a person on trial; it is a mark of incompetency to do so.
Accord Peterson v. State, 376 So.2d 1230, 1233 (Fla. 4th DCA 1979), cert. denied, 386 So.2d 642 (Fla.1980); Carter v. State, 356 So.2d 67 (Fla. 1st DCA 1978). These cases apply with special force here, in which the evil "type" was allegedly composed of those who "think like" racists.
By omitting extended treatment of the other claimed improprieties,[2] we do not mean to suggest that they did not occur or should be repeated. Those we have discussed were more than enough to fatally compromise the defendants'
most important right under our system, the right to the `essential fairness of [their] criminal trial.' Dukes v. State, 356 So.2d 873, 874 (Fla. 4th DCA 1978).
Knight v. State, 672 So.2d 590, 591 (Fla. 4th DCA 1996), quoting Peterson, 376 So.2d at 1234. Notwithstanding that they may not *308 have been properly objected to below, we cannot approve the result of a trial which contained these comments and therefore must reverse for a new one.
Reversed and remanded.
NOTES
[1] These include improperly (a) vouching for the testimony of the correction officers, see Davis v. State, 663 So.2d 1379 (Fla. 4th DCA 1995), (b) commenting on the defendants' and their witnesses' failure to complain about the officer's conduct, see Lee v. State, 422 So.2d 928 (Fla. 3d DCA 1982), pet. for review denied, 431 So.2d 989 (Fla.1983), and (c) arguing that the defendants had been guilty of other crimes which were both uncharged and unsupported by the evidence. See Glassman v. State, 377 So.2d 208 (Fla. 3d DCA 1979).
[2] Ibid.