746 So.2d 1145 (1999)
F.J.W. ENTERPRISES, INC., etc., Appellant,
v.
Jonathan L. JOHNSON, Appellee.
No. 98-3511.
District Court of Appeal of Florida, Fifth District.
November 12, 1999.
Rehearing Denied December 22, 1999.
George N. Meros, Jr., and Chanta G. Hundley of Rumberger, Kirk & Caldwell, P.A., Tallahassee, for Appellant, F.J.W. Enterprises, Inc.
J. Stephen McDonald of Robertson, Williams & McDonald, P.A., Orlando, for Appellee.
HARRIS, J.
Johnson and his family were in the parking lot of Sonny's Bar-B-Q restaurant when Doyle pulled his automobile to a stop *1146 at a point that Johnson believed to be too near to them. Johnson commented on this fact to Doyle and an argument ensued. Words immediately escalated into a shoving incident at which time Johnson confronted Doyle with a knife (whether opened or unopened was in dispute) and Doyle retreated to his automobile, obtained a firearm, and shot Johnson causing injury. Testimony indicated that the entire confrontation lasted a very short period of time. Johnson sued Sonny's claiming inadequate security and obtained a jury verdict in excess of $500,000 dollars with Johnson 49% at fault and Sonny's 51%.
Plaintiff's theory of liability was that drugs were being dealt from Sonny's kitchen by employees using a public telephone located outside the restaurant. Because of this, and because there had been several incidents of criminal activity within a six-block area, plaintiff urged that Sonny's was negligent because it did not have a security guard on premises at the time of the shooting.
The issue of Sonny's liability for Doyle's actions is not a specific appeal issue, but the closeness of the issue of liability is relevant in evaluating the effect of the errors urged on appeal.[1]
Johnson is white; Doyle is black. Although the race of either seems immaterial to this case[2], it was improperly raised *1147 by plaintiff's counsel. We do not accept plaintiff's justification for doing so. Because the defense was concerned that the racial difference between Doyle and Johnson would surfaceindeed Johnson had a picture of Doyle admitted into evidence "in order to show his weight and height"it asked on voir dire whether any potential juror would be biased because of a "personal confrontation with a member of another race?" If everyone were color blind, the question would have been unnecessary. Everyone is not. Based on the facts of this case, it was a legitimate question. It was an appropriate question regardless of the race of the potential juror. The question was designed to make the jurors commit to color blindness. It did not justify plaintiff's counsel's statement during the questioning of a witness that the defense "had played the race card." This has become a "buzz word," since the O.J. Simpson case, indicating that one has unnecessarily and improperly inserted the issue of race into a case. Although the defense objected and the objection was upheld, the skunk had been released into the jury box. See Walt Disney World Co. v. Blalock, 640 So.2d 1156, 1158 n.1 (Fla. 5th DCA 1994). The court denied the motion for mistrial.
Concerning the confrontation, there was a dispute as to whether Johnson followed Doyle back to his automobile with an open knife. Johnson contended that he only wanted to frighten Doyle with a display of his closed knife. Plaintiff's counsel, during his opening statement, had informed the jury, "Well, after Mr, Johnson got popped a couple of times and cupped the knife in his handby the way, Susan, who's the eyewitness in this, it was her testimony she didn't know he had a knife. She didn't know. He didn't lunge at anyone. He didn't swing or point it." Defense followed up on this during closing, "Ask Mr. McDonald if there was no contradictory testimony to be heard, why [Susan] didn't take the stand, the only other witness. If the knife wasn't open, Why didn't [Susan] take the stand and say it? If Mr. Johnson was not the pursuer, the aggressor, why didn't [Susan] say that?" This was an appropriate question.[3] Plaintiff's counsel responded, "[Sonny's counsel] talked about our failure to call Susan Hoffman. It wasn't a failure. She said the same thing her husband said. He knows it. He deposed her." This "testimony" by plaintiff's counsel about a deposition not in evidence was a highly inappropriate response.[4] The defense objection was sustained; its motion for mistrial was denied.
Because the issue of liability was close at best, these improper statements, properly preserved, take on added significance and we find that the court abused its discretion in finding that the cumulative effect of the improper statements could not have prejudiced the defense by preventing a calm and considered atmosphere in which the jury should determine its verdict. See Okey v. Monarch Insurance Company of Ohio, Inc., 392 So.2d 57 (Fla. 5th DCA 1981), Budget Rent A Car Systems, Inc. v. Jana, 600 So.2d 466 (Fla. 4th DCA 1992), Cohen v. Pollack, 674 So.2d 805 (Fla. 3d DCA 1996).
REVERSED and REMANDED for further action consistent with this opinion.
PETERSON, J., concurs.
ANTOON, C.J., dissents, with opinion.
ANTOON, C.J., dissenting.
I respectfully dissent. The majority discusses the issue of foreseeability at length, but in the end acknowledges that it is not an issue before us. In fact, the only issue before us is whether the trial court abused *1148 its discretion in denying the motion for new trial. Upon review of the record, I cannot agree with the majority's conclusion that the trial court abused its discretion in denying Sonny's motion for a new trial.
It is important to put the comments of plaintiff's counsel in context. The issue of race was not first raised by Sonny's in voir dire. Before the trial began, Mr. Johnson was placed on notice that Sonny's intended to discredit him by showing that he was a racist when Mr. Johnson learned that Sonny's intended to question him regarding an unrelated traffic accident with an African-American man. Mr. Johnson then filed a motion in limine arguing that race should not be an issue in the case. In response to the motion in limine, counsel for Sonny's stated:
I intend to ask about it, yes Your Honor, that was my recollection. This is a confrontation. Mr. Doylethe Doyle brothers are blacks. The rear-ender confrontation was with a black, and it goes to show Mr. Johnson's thought processes, propensities.
Counsel for Mr. Johnson continued to object to race being injected as an issue stating:
If he is going to open up this thing, going to play the race cards, so to speak, I'll have to call additional witnesses to diffuse it if that's the sole purpose. It doesn't have any probative value, and it's to incite the jury to some sort of prejudice against my client.
The trial court denied the motion in limine.
If there was any doubt that Sonny's was going to make race an issue in the trial it was removed during voir dire. The questions asked by counsel for Sonny's were not general in nature but instead specifically referenced Mr. Johnson and the facts. Again, Mr. Johnson objected to these questions injecting the issue of race, but the objection was overruled.
It was in this context that Mr. Johnson called a witness to establish that he was not a racist. That witness was an African-American co-worker and social friend of Mr. Johnson. After asking a series of questions, including whether Mr. Johnson ever used racial epithets, Mr. Johnson's lawyer apologized for asking the questions explaining that the "racial card" had been played. These facts do not legitimize counsel's use of the expression in the presence of the jury, but they do explain the context in which the statement was made.
The record demonstrates that this experienced trial judge was attentive and exercised considerable control over the proceedings. He was vigilant in assuring that both parties received a fair trial, sustaining objections to the conduct which is the subject of this appeal and appropriately admonishing counsel for exhibiting inappropriate conduct. There seems to be little doubt that the trial judge in this case had a superior vantage point from which to evaluate the conduct of counsel in deciding whether a new trial was required. Our supreme court in Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), cited with approval the test for appellate review of a trial judge's exercise of discretionary power outlined in Delno v. Market Street Railway Company, 124 F.2d 965, 967 (9th Cir. 1942):
Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.
I cannot agree with the majority that, under the circumstances of this case, the trial court acted unreasonably in denying Sonny's motion for new trial. Therefore, I would affirm.
NOTES
[1] Plaintiff's position was that Sonny's was negligent in not having a security guard patrol its parking lot. This duty, plaintiff contends, was created because Sonny's was in a high crime area, employed former criminals in its kitchen (some of whom dealt drugs), and maintained a public phone which was sometimes used for drug transactions. Since it is not contended that drugs were involved in the Doyle-Johnson confrontation, it must be plaintiff's contention that had a security officer been on the premises to prevent drug deals, he or she would have prevented the altercation which led to the injury. Ignoring the law and economics issue as to whether the courts should foist security guards upon every business open to the public which has a public telephone and which lies within a six-block area where numerous crimes have occurred (probably most six-block areas in most communities), it is highly speculative whether a security officer could have prevented the injury in this case.

Judge Cowart, in his concurring opinion in Reichenbach v. Days Inn of America, Inc., 401 So.2d 1366 (Fla. 5th DCA 1981), concludes that "[e]mploying security guards ... may deter crime generally but cannot reasonably be expected to prevent all crime or any one specific criminal act." Judge Cowart noted that "[b]y their very nature assaults usually occur suddenly and without warning and without giving an opportunity to defend. Therefore, to prevent an assault by one person upon another requires an opportunity arising from some specific knowledge, notice or warning." Suppose the security officer had been inside protecting the customers or even in the parking lot but at a distance from the altercation; would Sonny's still be liable? See Crown Liquors of Broward, Inc. v. Evenrud, 436 So.2d 927 (Fla. 2d DCA 1983) (no liability where there was no opportunity to protect against the risk of harm involved in the litigation). This was a case of escalating road rage that took place in the parking lot instead of on the highway. Even though Doyle was negligent in driving too close to Johnson, it was Johnson's outrage, even if justified, that fueled the confrontation. When Doyle "pushed" in retaliation for Johnson's comments, Johnson upped the ante by threatening with the knife (opened or unopened). Should the courts impose liability on a business owner for the consequences resulting from one's lack of self control when provoked by a third person on business property?
In Stevens v. Jefferson, 436 So.2d 33 (Fla. 1983), the supreme court held that the proprietor of a place of public entertainment (a saloon in Stevens but we assume it would also apply to restaurants), who from past experience should know that there is a likelihood of disorderly conduct by third persons in general which may endanger patrons, has a duty to take action to protect against the anticipated risk. It is the plaintiff's obligation to show that he was within the "zone of risk." There is no showing that Sonny's was aware of inappropriate driving in its parking lot which might cause road rage. There was not even testimony that any previous assaults had occurred in the parking lot.
[2] There is no indication that Doyle stopped too close to Johnson because Johnson is white. There is no indication that Johnson became outraged by the incident because Doyle is black. And there is no indication that Doyle responded to Johnson's actions as he did because Johnson is white.
[3] Fino v. Nodine, 646 So.2d 746 (Fla. 4th DCA 1994); Linehan v. Everett, 338 So.2d 1294 (Fla. 1st DCA 1976).
[4] Dubus v. Pietz, 728 So.2d 769 (Fla. 1st DCA 1999); Silva v. Nightingale, 619 So.2d 4 (Fla. 5th DCA 1993); Venning v. Roe, 616 So.2d 604 (Fla. 2d DCA 1993).