768 So.2d 1247 (2000)
Logan WALLACE, Appellant,
v.
STATE of Florida, Appellee.
No. 1D98-1567.
District Court of Appeal of Florida, First District.
October 17, 2000.
*1248 Nancy A. Daniels, Public Defender and P. Gifford, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Laura Fullerton Lopez, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellee.
PADOVANO, J.
Logan Wallace, the defendant, appeals his conviction for second degree murder. Among other arguments for reversal, the defendant contends that the prosecutor's repeated appeals to racial prejudice denied him the right to a fair trial. We agree with the defendant on this point and therefore find it unnecessary to discuss any of the others. Because we are unable to determine beyond a reasonable doubt that the prosecutor's improper appeal to racial bias was harmless, we reverse for a new trial.
The confrontation leading to the homicide took place on January 4, 1997, in a café operated by the victim, Julius McKinnon. Several of the state's witnesses testified that the defendant had been making vulgar comments to a woman in the café. McKinnon was apparently aware of this and he ordered the defendant to leave. According to some of the state's witnesses, McKinnon then began to hit the defendant on the head as he was going out the door. One witness for the state, Charles Williams, said that he saw McKinnon beating the defendant on the head with a pistol.
Eventually, the defendant threw McKinnon to the ground just outside the café. Williams escorted McKinnon back inside and then came back out to advise the defendant to leave. The defendant told Williams that he had lost his eyeglasses in the scuffle and did not intend to leave until he found them.
McKinnon came back outside a few minutes later and, as he emerged from the café, he fired a shot through the doorway. Williams and another man were able to subdue McKinnon long enough to get the pistol away from him and escort him back inside for the second time. While the defendant was still looking for his glasses, McKinnon came outside yet again, this time with a .357 Magnum revolver tucked in the waistband of his pants and a smaller pistol in his hand. McKinnon tried to hit the defendant with the smaller pistol but the defendant ducked. The defendant then snatched the .357 Magnum from McKinnon's waistband, and the smaller pistol dropped to the ground.
The defendant fired one shot into the air and told the bystanders that someone should call 911. At this point, the witnesses for the state gave differing accounts of the confrontation between the two men. Some of them testified that the defendant said "Julius, I am going to do what you should have [done] to me," and then leveled the .357 Magnum and shot McKinnon. Others said that McKinnon was heading back toward the café but spun around in the direction of the defendant just before the defendant fired the fatal shot.
The defendant took the witness stand and testified that he did not intend to harm McKinnon. According to the defendant, McKinnon walked away as if to leave but then turned around and lunged at him. The defendant explained that McKinnon was "coming at him" and that he did not know where the small gun was. He raised the revolver again, and it fired, striking McKinnon.
*1249 During the state's case in chief, defense counsel sought to exclude references to the race of the woman in the café as well as evidence regarding the nature of the conversation the defendant was having with her. When the prosecutor called Cleveland McNabb as a witness, defense counsel anticipated that the state might elicit testimony that the defendant had been making vulgar and offensive remarks to a white woman in the café. Defense counsel voiced a concern that the jurors, all of whom were white, might not approve of the fact that the defendant, a black man, was making vulgar remarks to a white woman.
Counsel for the defense argued that the nature of the initial incident between the defendant and the woman in the café was irrelevant to any issue in the trial. The woman was not listed on the state's witness list and did not testify. Additionally, counsel for the defense pointed out that he had not questioned the jurors on their views about interracial relationships. He was concerned about this point because other witnesses said that the woman had accompanied the defendant into the café that evening.
The trial court agreed that the woman's race was irrelevant and directed the prosecutor to limit the testimony to a statement that the defendant had made some form of vulgar or offensive comment to a female patron in the café. At that point, the prosecutor advised the court and counsel that he would instruct the witnesses to refer to the woman in the café simply as a woman or as a female patron.
Despite this representation, the prosecutor elicited testimony from Cleveland McNabb that the defendant was engaged in a vulgar confrontation with a white woman in the café. The prosecutor asked McNabb if there were any females in the café that night, and McNabb said "Well, the white lady, she was in there." Then to emphasize the point, the prosecutor asked "The white lady?" and McNabb answered "Yeah." Immediately following this exchange, the prosecutor asked McNabb if the defendant had made "a vulgar or offensive comment to the lady" to which McNabb replied "Yeah, he was talking nasty to the lady."
During the cross examination of the defendant, the prosecutor returned to the encounter between the defendant and the woman in the café. Here again he emphasized the woman's race:
Q. Now on January 4th you went into that café and is it right, Mr. Wallace, that you began making vulgar comments to the white female that was in the café? (emphasis added)
A. No.
* * *
Q. You didn't make any comment to her in the café?
A. No.
Q. that was vulgar or offensive or suggested some type of sexual activity?
Counsel for the defendant objected and moved for a mistrial on the ground that this line of questioning was in direct violation of the court's order. He argued that the prosecutor had intentionally prejudiced the jury. The trial court denied the motion but told the prosecutor that he had already "hit that twice" and warned him not to ask any further questions on the subject.
In the face of this warning, the prosecutor attempted to question the defendant yet again about his alleged vulgar and offensive comments to the woman in the bar. This prompted defense counsel to make another motion for mistrial. The trial court denied this motion, as well, but admonished the prosecutor once again to refrain from asking any further questions on the subject. This time, the trial court bluntly said, "We're done with it."
In his closing argument, counsel for the defendant argued that the defendant could not be guilty as charged of first degree murder, because he acted in self defense. *1250 The jury rejected this argument, but found the defendant guilty of the lesser included crime of second degree murder with a firearm. The defendant was sentenced to life in prison and he now challenges his conviction on appeal.
We begin with the fundamental proposition that racism has no place in our system of justice. See Robinson v. State, 520 So.2d 1 (Fla.1988), citing Cooper v. State, 136 Fla. 23, 186 So. 230 (1939); Huggins v. State, 129 Fla. 329, 176 So. 154 (1937). Florida courts have consistently recognized that it is improper to interject a racial or ethnic reference that is not relevant to an issue in the case. See F.J.W. Enters., Inc. v. Johnson, 746 So.2d 1145 (Fla. 5th DCA 1999); Terrazas v. State, 696 So.2d 1309 (Fla. 2d DCA 1997); Reynolds v. State, 580 So.2d 254 (Fla. 1st DCA 1991). Moreover, the courts have recognized that an appeal to racial or ethnic bias is "particularly reprehensible" when made by a lawyer representing the state in a criminal trial. See Perez v. State, 689 So.2d 306 (Fla. 3d DCA 1997).
In the present case, the jurors were required to determine whether the homicide was justifiable. The race of the woman with whom the defendant had been conversing in the café earlier in the evening had nothing to do with the issue of his guilt or innocence. All the prosecutor needed to do to put the events in the proper context was to elicit a brief statement that the defendant was asked to leave because he was arguing with another patron. Nevertheless, he repeatedly emphasized that the woman in the café was a white woman and he repeatedly stressed the fact that the defendant had been making vulgar comments to her.
These actions effectively invited the jury to make a decision based on a characterization of the defendant and not on the evidence of his guilt or innocence. Without even a pretense of relevancy the prosecutor managed to conjure up the image of a black man making rude and sexually offensive comments to a white woman. Some members of the defendant's all-white jury may have reacted negatively to this portrayal of the defendant, regardless of their views of the evidence.
We are not suggesting that the jurors were affected by the prosecutor's appeal to racial prejudice merely because all of them are white. The point is that no jury should be exposed to an argument like the one made in this case. Unfortunately, racism continues to exist in some parts of our society. See Powell v. Allstate Ins. Co., 652 So.2d 354 (Fla.1995) (acknowledging that there are still those who would deny equal human dignity based on race); Rose v. Mitchell, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979) (noting that racial discrimination still exists albeit in more subtle forms). Our system of justice cannot tolerate an attempt to exploit these feelings of racial prejudice to the extent that they may exist among those who serve on juries.
The state argues that the defendant's conviction should be affirmed, because he did not show that the prosecutor's actions were prejudicial. This argument is predicated on the decision in Goodwin v. State, 721 So.2d 728 (Fla. 4th DCA 1998), that the defendant has the burden of showing prejudice as to an error not involving a deprivation of a constitutional right. Although the state's argument was supportable when it was made, the authority upon which it was based has since been rejected. The Florida Supreme Court held in Goodwin v. State, 751 So.2d 537 (Fla.1999), that the defendant has the initial burden of showing that an error was committed, but then the burden shifts to the state to show beyond a reasonable doubt that the error did not affect the outcome of the trial. This holding reaffirmed the harmless error standard the court had previously announced in State v. DiGuilio, 491 So.2d 1129 (Fla.1986), despite contrary language in section 924.051(7), Florida Statutes (Supp.1996).
Based on the DiGuilio standard, we conclude that the improper appeal to racial *1251 prejudice in this case was not harmless. The alleged victim, McKinnon, was plainly the initial aggressor. He physically assaulted the defendant and he threatened him with a firearm. The defendant's statement that McKinnon lunged toward him just before the fatal shot was fired was supported by some of the state's own witnesses. If the jurors had been confined to a consideration of the evidence, they might well have concluded that the defendant shot McKinnon in self defense. In any event, we are hopeful that this opinion will serve as a warning for those who operate on the margin of propriety. A lawyer cannot make a deliberate appeal to prejudice and expect that a reviewing court will pass it off as harmless error.
In summary, we conclude that the prosecutor's repeated appeals to racial prejudice deprived the defendant of his right to a fair trial. Because we are unable to state beyond a reasonable doubt that the prosecutor's improper conduct had no effect on the outcome of the case, we must reverse with directions to grant the defendant a new trial.
Reversed.
JOANOS and BROWNING, JJ., CONCUR.