NORTHCUTT, Judge.
Andrew Evans seeks a new trial on charges of battery on a law enforcement officer and resisting arrest without violence. He claims the State, in its questioning of a witness and in its closing argument, improperly injected racial issues into his first trial. We agree, reverse his convictions, and remand for a new trial.
Evans was charged as a result of an incident at a Wal-Mart Department Store. Evans’s stepdaughter, Ms. Jones, worked at the store. Evans and his wife went to the store to pick up Jones at the end of her shift. Evans went into the store to retrieve her while his wife waited outside. Inside, Evans heard that Jones was being investigated for an alleged theft. He went to the room where Jones was being questioned and tried to tell her not to give a statement. At this point, Evans testified, *1236 the investigating officer became belligerent, grabbed his arm, and threatened to arrest him. Evans said he tried to leave but another officer blocked his path. Evans squeezed past him and went outside the store to tell his wife about the investigation. According to Evans, another officer approached him, pushed him against a wall, tried to handcuff him, and sprayed him with mace. Two officers then tied his legs together and placed him in a police cruiser.
The law enforcement personnel told a different story. The officer investigating Jones said Evans was agitated when he entered the room. He began swearing, and when the officer attempted to escort him out, Evans pushed the officer’s hand away. Evans’s demeanor continued to worsen as the officer maneuvered him out of the store. The officer used his body to place Evans against an outside wall of the Wal-Mart. Evans began yelling and flailing about. Another officer came to assist. They had to force Evans to the ground and spray him with mace in order to handcuff him.
These divergent versions of the incident show that this case was a credibility contest. The defense pointed out that numerous shoppers had seen what happened and perhaps could have helped the jury determine which version was closer to the truth. But the officers and the Wal-Mart employees had not obtained the witnesses’ names.
During the State’s case, the Wal-Mart manager testified he had heard comments from a crowd outside the store to the effect that Evans was not being treated properly. The prosecutor then posed the following series of questions:
Q. [LJet’s talk about that for a minute. What kind of context were these comments made in?
A. During — what do you mean by context?
Q. Tell the jury the — demographics of the people in the crowd.
A. It wasn’t — are you asking me whether it’s racially oriented?
Q. Yes.
A. Yes, it was.
Q. Was [Evans] and his wife in any way instigating the crowd regarding the race card issue?
A. Not to my knowledge, no.
Q. The people in the crowd, what kind of comments were they making, was it race-related?
A. Yes, it was.
Q. And were the comments coming from — from African American people?
A. Yes.
The prosecutor continued his race-based argument in closing:
But he doesn’t want you to believe what [the manager] said after that, which was, yeah, there were people out there in the parking lot not happy about what was happening with [Evans]. [Defense counsel] wants you to believe that out of [the manager]. But he doesn’t want you to believe the next thing [the manager] said, which was, those people were African Americans. [Defense counsel] wants you to stop at that point. [The manager] said, the African Americans were upset about it, not whites, and not Hispanics. And, I’m sorry, race issues exist.
Our courts have consistently recognized the impropriety of injecting irrelevant racial references into a trial, particularly when the comments are made by a lawyer representing the State in a criminal prosecution. See Wallace v. State, 768 So.2d 1247, 1260 (Fla. 1st DCA 2000); Perez v. State, 689 So.2d 306, 307 (Fla. 3d DCA 1997). By its questions and comments in Evans’s trial, the State insinuated that the *1237 witnesses to the incident would have been of no value because they, like Evans, were African Americans and would have taken his side no matter what the truth was. The prosecutor implied that the witnesses would have perjured themselves to support a defendant of their race. As we stated in Terrazas v. State, 696 So.2d 1309, 1310 (Fla. 2d DCA 1997), attempts to attribute criminal conduct to persons based on their race have been universally condemned. The State’s race-based comments fatally tainted Evans’s trial.
We reverse Evans’s convictions and remand for a new trial.
WHATLEY and COVINGTON, JJ., Concur.