Per Curiam.
Appellant Henry Jones appeals his convictions of first degree murder with a firearm and burglary of a dwelling with assault or battery. For the reasons explained herein, we hold that the trial court reversibly erred during the voir dire phase of jury selection by barring Appellant’s attorney from questioning prospective jurors regarding their attitudes on interracial cidme. As such, we remand for a new trial.[1]
Background
The relevant facts on appeal are as follows. During voir dire, Appellant’s attorney sought to question the prospective jurors about their attitudes regarding a black defendant who was accused of murdering a white victim. She began, “[s]o the one thing I didn’t mention, though, the other day was that the alleged victim in the case is—.” She was about to say “white,” but the prosecutor objected to the question for being “prejudicial” and “improper.” In response, Appellant’s attorney explained why she wanted to ask the question: “I think that historically ... there’s been times where jurors are, tend to be more impacted by the race of the defendant if the victim is white and I think that that’s a legitimate issue to bring up and broach .... ” The trial court sustained the objection, explaining:
It’s certainly appropriate to inquire because your client is black, if anybody has any prejudice, race, sympathy, bias, prejudice because of that. That’s perfectly acceptable. But we’re not going to get into a racial, you know, we got a white, white family that’s a victim or a white victim and a black defendant, all that kind, let’s minimize the race other than what you feel you have to ask for bias and prejudice, if they could be a fair juror. ... I’ll sustain the objection.
Although the trial court did not allow questions about interracial violence, it did allow Appellant’s attorney to ask the prospective jurors whether they harbored racist attitudes generally. For instance, Appellant’s attorney asked the jurors, “[d]oes anyone think that there’s any way that they might think in some regard, well, maybe [Appellant] has more of a propensity to be violent or more of a propensity to commit any type of crime at all based on race? Does anyone think that might weigh in?” Appellant’s attorney asked similar questions on two more occasions. Each time, the jurors answered in the negative.
Once the jury was empaneled, defense counsel made a motion “to strike the panel because [she] was not permitted to ask the jurors whether they would be biased in this case based on the fact that [Appellant] 'is an African-American and the fact that the victim is white.” The court again denied Appellant’s request.
Analysis
We review the trial court’s decision to limit questions during voir dire for an abuse of discretion. Hoskins v. State, 965 So.2d 1, 13 (Fla. 2007).
*744 We begin by noting Florida Rule of Criminal Procedure 3.300(b), which states that a defendant has a basic right to examine prospective jurors: “Counsel for both the state and defendant shall have the right to examine jurors orally on their voir dire.” There are generally no bright line rules “to determine the limits that the trial court may impose on voir dire.” Mendez v. State, 898 So.2d 1141, 1143 (Fla. 5th DCA 2005).
“The purpose of voir dire is to ‘obtain a fair and impartial jury, whose minds are free of all interest, bias, or prejudice Hoskins, 965 So.2d at 13 (quoting Ferreiro v. State, 936 So.2d 1140, 1142 (Fla. 3d DCA 2006)). To obtain a fair and impartial jury, and for “voir dire examination of jurors ... to have any meaning, counsel must be allowed to probe attitudes, beliefs and philosophies for the hidden biases and prejudices designed to be elicited by such examination.” Lowe v. State, 718 So.2d 920, 923 (Fla. 4th DCA 1998). As such, “[a] court may not preclude a party from inquiry into bias bearing on a matter that is at the heart of the defendant’s case.” Hillsman v. State, 159 So.3d 415, 420 (Fla. 4th DCA 2015) (quoting Ingrassia v. State, 902 So.2d 357, 359 (Fla. 4th DCA 2005)).
As one of our sister courts concluded, inquiry regarding interracial crime can be a “legitimate question.”
Because the defense was concerned that the racial difference between [the defendant] and [the victim] would surface ... it asked on voir dire whether any potential juror would be biased because of a “personal confrontation with a member of another race?” If everyone were color blind, the question would have been unnecessary. Everyone is not. Based on the facts of this case, it was a legitimate question. It was an appropriate question regardless of the race of the potential juror. The question was designed to make the jurors commit to color blindness.
F.J.W. Enters., Inc. v. Johnson, 746 So.2d 1145, 1147 (Fla. 5th DCA 1999) (emphasis added).
Similarly, in Turner v. Murray, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986), the Supreme Court of the United States held “that a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias.” Id. at 36-37, 106 S.Ct. 1683. The Court took issue with the trial court barring defense counsel during voir dire from questioning jurors about their attitudes toward interracial crime. Id. Admittedly, the Court in Turner vacated only the capital sentence, not the adjudication of guilt. Id. at 37, 106 S.Ct. 1683. However, the principle of permitting defense counsel great latitude in eliciting attitudes about race during jury selection need not be limited to capital cases. The stakes for the defendant are still high in non-capital trials for first degree murder.
In a concurrence in Turner, Justice Marshall, joined by Justice Brennan, argued the Court should have also vacated the adjudication of guilt: “I believe that a criminal defendant is entitled to inquire on voir dire about the potential racial bias of jurors whenever the case involves a violent interracial crime.” Id. at 45, 106 S.Ct. 1683 (Marshall, J., concurring) (emphasis added); see also Aldridge v. United States, 283 U.S. 308, 311, 51 S.Ct. 470, 75 L.Ed. 1054 (1931) (“[T]he defendant was entitled to have the jurors asked whether they had any racial prejudice, by reason of the fact that the defendant was a negro and the deceased a white man .... ”).
Reversing and remanding for a new trial is a decision not to be taken lightly, considering the emotional toll on the victim’s family. However, we must also be cogni *745 zant of the rights of the defendant and our own precedent. This Court has reversed adjudications of guilt in separate contexts because trial courts improperly limited questions during voir dire. In Campbell-Eley v. State, 718 So.2d 327 (Fla. 4th DCA 1998), we reversed because the trial court forbade defense counsel from asking jurors whether they could fairly and impartially treat the death of a fetus and mother as only one murder instead of two. Id. at 328-29. In Moses v. State, 535 So.2d 350 (Fla. 4th DCA 1988), we reversed because the trial court would not allow defense counsel to ask jurors whether they harbored an unyielding bias against the defendant because of his status as a convicted felon. Id. at 352. In these cases, we sought to promote meaningful voir dire that was requested by defense counsel for the purpose of detecting hidden biases and prejudices. We reverse the instant case for the same reason.
Conclusion
We recognize that the trial court and State most likely sought to prohibit such questions only to not embroil the jury with the contentious topic of racism. This is commendable in the abstract. However, as in F.J.W. Enterprises, the banned inquiry was a “legitimate question” in the context of a case that involved a white victim and a black purported assailant. It was an abuse of discretion on the part of the trial court to deny the defense the opportunity to ask legitimate questions during voir dire regarding the prospective jurors’ attitudes toward interracial crime. Accordingly, this matter is reversed and remanded for a new trial.

Reversed and remanded.

Taylor, Conner and Forst, JJ., concur.

. In light of our decision to remand for a new trial, we offer no opinion regarding the other issues raised by Appellant in his initial brief.