832 So.2d 959 (2002)
Jermaine Carlos JOHNS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D01-4436.
District Court of Appeal of Florida, Second District.
December 27, 2002.
*960 James Marion Moorman, Public Defender, and Ronald S. Tulin, Special Assistant Public Defender, Bartow, for Appellant.
Richard E. Doran, Attorney General, Tallahassee, and Sonya Roebuck Horbelt, Assistant Attorney General, Tampa, for Appellee.
GREEN, OLIVER L., Senior Judge.
Jermaine Carlos Johns challenges his conviction and sentence for attempted robbery while wearing a mask. Johns raises four issues on appeal, only one of which has merit. Because we agree that improper comments made in the State's closing argument denied Johns a fair trial, we reverse.
The evidence at trial established that two men attempted to rob a Burger King manager as he was leaving the restaurant after closing. One of the men was wearing a mask, and the other remained too far away for the victim to see clearly. The man in the mask demanded the "pouch" from the victim, presumably in reference to a restaurant bank bag. When the victim responded that he did not have the pouch, the robbers quickly walked away.
At the same time, a sheriff's department helicopter happened to be overhead, and a Pasco County sheriff's detective in the helicopter observed the attempted robbery by means of a forward-looking infrared (FLIR) camera. This type of camera allowed the detective to see the victim and the robbers as glowing forms, but he could not identify any features of any of the individuals. The detective tracked the robbers with the FLIR camera as they made their escape, and he directed other sheriff's officers to form a perimeter on the ground. While officers on the ground were setting up a perimeter, the detective using the FLIR camera lost track of both robbers under the trees.
As Pasco Sheriff's Deputy Collazo was driving to his designated location in the perimeter, a man ran across the road, almost running into the patrol car. Collazo immediately began a foot pursuit of this man, believing him to be one of the robbers. As Collazo was chasing this suspect, he found Johns standing behind a tree, sweating and out of breath and looking up at the helicopter. Collazo stopped chasing the running suspect and arrested Johns. In Johns' back pocket, Collazo found a black "doo rag." Collazo took Johns back to Burger King where the victim was giving a statement. While the victim could not identify Johns as one of his assailants, he did identify Johns' "doo rag" as the mask the robber was wearing.
Following the victim's identification of Johns' "doo rag" as the mask worn by the robber, the police read Johns his Miranda[1] rights. Johns then gave the police various conflicting statements concerning how he got to the area, his reasons for being in the area, and his reasons for hiding behind the tree. Johns was subsequently charged with attempted armed robbery while wearing a mask.
At trial, the State argued that Johns was found in the area of the crime with a "doo rag" identified by the victim as the mask worn during the attempted robbery. The State argued that Johns' conflicting statements to police showed that he was not telling the truth about why he was in the area or what he had been doing. Johns' theory of defense was that he was caught in the wrong place at the wrong time. He argued that he had been in the area to visit his girlfriend, that he had left her apartment to find a pay phone, and that when he spotted the helicopter, he realized that there was trouble in the area. He decided to hide behind the tree out of *961 the way until the police activity died down and he could go about his business.
During closing arguments, the prosecutor began with the following comment:
[PROSECUTOR]: You folks, I'd ask that you not forget the victim as you sit in this courtroom and you see the defendant's mother, and younger brother.
As we talked in jury selection about sympathy, and I understand that sympathy is a normal very natural human response, I ask that you not forget the victim.
[DEFENSE COUNSEL]: Objection. May we approach for a legal motion?
BENCH CONFERENCE:
[DEFENSE COUNSEL]: Motion for mistrial on the grounds he's bringing sympathy as an issue before the jury.
THE COURT: Okay. The motion for mistrial is denied. But I don't want either side to be arguing sympathy, and say remember the victim, it comes too close to that. So I'm not going to allow you to continue in this vain [sic].
The jury was instructed to disregard the prosecutor's comments. Despite this admonition, the prosecutor continued:
Folks, I'm not going to ask you to convict the defendant because you feel sorry for the victim, that's not what I'm asking you to do. I'm not asking you to acquit the defendant because you feel sorry for his family.
Later, the prosecutor made the following argument concerning whether Johns was properly charged:
Did we charge someone who's 6'2" or 6'4," with this crime? No. Did we charge someone who didn't have the implements necessary to pull this crime off? No.
Did we charge someone who the victim described as having a speech pattern consistent with an African American citizen with our country? No. Because the defendant's voice has a distinct pattern, which you all heard. Did we charge somebody, folks, that wasn't in the area? No.
Did we charge somebody who wasn't running? No. Did we charge someone who didn't have the means of escape in a vehicle? No. Did we charge someone who didn't have the keys to the means of escape? No. And did we charge someone who was honest with law enforcement? No.
We charged someone who had every opportunity and completely made every effort from day one to impede these officers' investigation over and over again, as evidenced by those tapes.
A short time later, the prosecutor continued with this argument:
Number two, the defendant is guilty of the lesser included offense of attempted robbery without a weapon.
Now, why does that not apply to these facts? Simple. Again your common sense will tell you it doesn't apply, because the victim in this case told you that he felt a blunt object in his ribs, and he looked down and saw the defendant's hand or a robber's hand around some object and he thought it was a gun.
He felt it was a gun, but did we charge the defendant with a gun? No. Because we couldn't prove it. We didn't charge anything that we couldn't prove. What we charged was provable.
(Emphasis added.)
Next, the prosecutor argued that "people like the defendant" committed crimes:
And unfortunately for the defendant the victim didn't have any money, because Burger King knows enough to know that the defendant, people like the defendant are out at night robbing people, especially managers of stores, so they don't let their managers go out with cash at night.
*962 (Emphasis added.) The court, sua sponte, interrupted the prosecutor at that point and admonished him that this argument was improper. In closing, the prosecutor argued, "What in the world entitles him the defendant to a verdict of not guilty? What in the world, mere possibility?"
In addition to these specific comments, throughout his argument the prosecutor continually denigrated Johns' theory of defense and belittled defense counsel for maintaining such a defense. The prosecutor also commented on facts not in evidence and improperly vouched for the credibility of the law enforcement officers who testified.
After deliberations, the jury found Johns guilty of the lesser offense of attempted robbery without a weapon while wearing a mask. Johns then brought this appeal, arguing, among other things, that the prosecutor's improper closing arguments denied him his right to a fair trial.
We begin by noting that while there was sufficient evidence to withstand a motion for judgment of acquittal, the evidence against Johns was not overwhelming. Johns was arrested within the perimeter set up by the police after the attempted robbery but more than seven-tenths of a mile from the Burger King where the attempted robbery occurred. Johns was not fleeing from the police when he was apprehended but was found hiding behind a tree. Deputy Collazo, who had been chasing a known suspect, gave up that chase after spotting Johns and arrested Johns instead. Johns did not resist Collazo or try to flee. Johns told Collazo that he had been at his girlfriend's house and that he had left there to find a pay phone. The only physical evidence connecting Johns in any way to the crime was the "doo rag." Based on this evidence, the case should properly have gone to the jury. However, contrary to the State's assertions, the evidence was not overwhelming.
In the context of this evidence, the prosecutor's improper arguments to the jury rose to the level of reversible error. The prosecutor's first statement was a request that the jury show sympathy for the victim. This type of argument is clearly improper. See Thomas v. State, 787 So.2d 27, 30 (Fla. 2d DCA 2001); Brown v. State, 593 So.2d 1210, 1211-12 (Fla. 2d DCA 1992). The prosecutor also argued that the State had charged the right person and had only brought charges that it could prove, implying the State only charges those who are guilty. An argument that the State only charges those who are guilty is improper. Ruiz v. State, 743 So.2d 1, 5 (Fla.1999). The prosecutor next argued that the reason that the robbery was not successful was because Burger King knew that "people like the defendant" were out there trying to rob employees. However, it is improper to cite witnesses or defendants as examples of a certain criminal type. Perez v. State, 689 So.2d 306, 307 (Fla. 3d DCA 1997). The State then went on to disparage Johns for having exercised his right to trial. This too is an improper argument. See Bell v. State, 723 So.2d 896 (Fla. 2d DCA 1998). Next, the State vouched for the credibility of the law enforcement officers who testified. This again is an improper argument. Brown v. State, 787 So.2d 229, 230 (Fla. 2d DCA 2001). Finally, the State's arguments that denigrated both Johns' defense and defense counsel were improper. Miller v. State, 712 So.2d 451, 453 (Fla. 2d DCA 1998); Lewis v. State, 711 So.2d 205, 206 (Fla. 3d DCA 1998). The trial court acknowledged the impropriety of these arguments, sustained the objections made, and instructed the jury to disregard the comments; however, the trial court denied Johns' motions for mistrial.
*963 In making these improper arguments, the prosecutor failed to maintain the demeanor required in a criminal trial. "A criminal trial is a neutral arena wherein both sides place evidence for the jury's consideration; the role of counsel in closing argument is to assist the jury in analyzing that evidence, not to obscure the jury's view with personal opinion, emotion, and nonrecord evidence[.]" Ruiz, 743 So.2d at 4. While no one of the comments standing in isolation would have required a new trial, this court must look at the entire trial record when considering whether the comments at issue are of such a nature as to destroy the fairness of the proceeding. Brown, 787 So.2d at 230. When considering the relative lack of evidence against Johns, the character of the evidence that did exist, and the number of improper arguments made by the prosecutor, it is apparent that the prosecutor's closing argument was improper with respect to the "neutral arena" in which a trial should be held, Ruiz, 743 So.2d at 4, and that the curative instructions were insufficient. The cumulative effect of these improper arguments was not harmless. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986) (holding that to establish harmless error, the State must show "beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction"). Accordingly, we reverse and remand for a new trial.
Reversed and remanded.
SILBERMAN and KELLY, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).