LAMBERT, J.
Andre P. Brinson appeals the judgment and sentence adjudicating him guilty of felony battery after a jury trial. Because we find that the cumulative effect of the State’s improper comments in both its opening statement and closing argument deprived Brinson of a fair trial, we reverse and remand for a new trial.
At the time of the incident, Brinson and the alleged victim, Shelby Graham, were living in the same apartment and were romantically involved. Graham was the State’s key witness at trial. There, she testified that Brinson “came in behind me and grabbed me by my hair and drug me through the living room and threw me down on my bed and then I fell onto the floor.” As a result, Graham suffered a fracture to her left arm that required surgery using six pins to correct. According to Graham, Brinson threw her down because he thought she had sex with another man who had previously visited then-apartment to use Graham’s crack pipe.
Graham’s credibility was a critical issue at trial. She testified that she did not report the incident until several days later and that, in the meantime, she told her mom and Brinson’s aunt, Sheila Debose, that she sustained her injury by falling. Debose testified that when she picked Graham and Brinson up the day after the incident, Graham told her that she had been in a fight with her female roommate and that she was laughing and talking with Brinson in the car. Officer Michael Math-yas, a defense witness who visited Graham at her apartment a day or two after the incident, testified that Graham was hesitant to talk about the altercation in any detail and was primarily concerned with having Brinson evicted from her apartment because he was allegedly stealing money from Graham to buy drugs. In light of this evidence, Brinson’s primary defense at trial was that Graham fabricated her story in order to have Brinson removed from her apartment.
Approximately four days after the incident, Graham went to the police station to obtain an injunction against Brinson. At that time, according to Officer Robert Claudio, Graham was “hesitant” to give information about the incident or to cooperate. Nevertheless, after speaking with Brinson, Officer Claudio felt he had sufficient probable cause to file a complaint affidavit. The State subsequently charged Brinson by information with felony battery *975 for allegedly striking Graham against her will, causing great bodily harm.
At the conclusion of the jury trial, Brin-son was adjudicated guilty and sentenced to five years in the Department of Corrections. He now argues that the prosecutor’s opening and closing remarks deprived him of a fair trial.
There are two standards of review applicable in this case. Where Brin-son objected to the allegedly improper comments, and his objection was overruled, the standard of review is abuse of discretion. McArthur v. State, 801 So.2d 1087, 1040 (Fla. 5th DCA 2001) (citing Moore v. State, 701 So.2d 545 (Fla.1997)). The standard of review is also abuse of discretion where Brinson moved for a mistrial and his motion was denied. Salazar v. State, 991 So.2d 364, 371-72 (Fla.2008). In contrast, where Brinson did not object to or move for a mistrial based on the allegedly improper comments, the standard of review is fundamental error. Thomas v. State, 748 So.2d 970, 985 n. 10 (Fla.1999). “In order for an error to be fundamental and justify reversal in the absence of a timely objection, ‘the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.”’ Randolph v. State, 853 So.2d 1051, 1068 (Fla.2003) (quoting Brown v. State, 124 So.2d 481, 484 (Fla.1960)).
The prosecutor made the following remarks during opening statements: [Graham] tells Officer Claudio what happened and he files a complaint affidavit, arrest report.
He doesn’t actually arrest the defendant because of the time — the time delay. The way they do it, the procedure, they file a complaint affidavit. My office reviews these complaint affidavits and whether they should file charges or not. And our office did decide to file charges. That’s why we’re here today.
As I said before, [Graham] is a victim in the truest sense. It’s common with domestic violence victims that they don’t report immediately—
Brinson immediately objected to these remarks and his objection was properly sustained. It was improper for the prosecutor to reference the State’s charging decision during opening statements because it implied “that the prosecution would not have been commenced, and that [the prosecutor] personally would not have participated unless it had already been determined that [the] defendant was guilty.” United States v. Garza, 608 F.2d 659, 664-66 (5th Cir.1979). However, because Brinson made no request for further action from the court after his objection was sustained, these remarks alone do not warrant a new trial. See Clark v. State, 363 So.2d 331, 335 (Fla.1978), abrogated on other grounds by State v. DiGuilio, 491 So.2d 1129 (Fla.1986) (“When there is an improper comment, the defendant, if he is offended, has the obligation to object and to request a mistrial. If the defendant does not want a mistrial, he may waive his objection.”).
Next, during the prosecutor’s initial closing argument, the prosecutor remarked that Graham had never been convicted' of a felony. Brinson’s objection to this statement was properly sustained because there were no facts in evidence suggesting that Graham had never been convicted of a felony. See Charriez v. State, 96 So.3d 1127, 1128 (Fla. 5th DCA 2012) (stating that it is improper for a prosecutor to refer to facts not in evidence). The prosecutor’s statements also constituted improper bolstering. See Hutchinson v. State, 882 So.2d 943, 953 (Fla.2004) (“Improper bolstering occurs when the State *976 ... indicates that information not presented to the jury supports the witness’s testimony.”), abrogated on other grounds by Deparvine v. State, 995 So.2d 851 (Fla.2008) (“Improper bolstering occurs when the State ... indicates that information not presented to the jury supports the witness’s testimony.”); cf. Welch v. State, 940 So.2d 1244, 1246 (Fla. 2d DCA 2006) (holding that “it was error for the trial court to allow the State to question the confidential informant on direct examination about her lack of felony charges” when there was no prior attack of the witness’s credibility). At that time, Brin-son moved for a mistrial. However, the trial court deferred argument on the motion and directed Brinson to give argument at the end of all closing arguments.
The prosecutor’s most egregious remarks occurred during his rebuttal closing argument, which began as follows:
MR. SMITH: So mad — the defendant is — Shelby Graham is mad and wanted to get back at the defendant. That’s why she made up this elaborate story with all this timeline so we could eventually be sitting here today to determine if Brinson committed this crime or not. Is Shelby Graham that elaborate? I mean you all saw her today. Is she that — is she all there enough to come up with all this — this whole story, how it happened and to get you here today all to sell this to get back at Brinson? Is that why we’re here today?
Or are we here — she’s simply telling the truth. She’s having to cry out. Finally she gets enough support through her mother, through the victim advocate, and through the officer. Someone’s, finally going to listen to her.
The State Attorney’s Office files on complaint affidavits every day. Our office — I mean there’s a reason that process exists. And that’s a — the reason is just like this. Victims aren’t very— when things happen like. this, victims don’t usually — domestic violence victims don’t want to go want to go [sic] forward a lot of the times. It doesn’t mean the crime did not happen. But they don’t want to go forward. And there’s a number of reasons for that. A lot of them have to do with fear.
MS. MORRIS: Objection; facts not in evidence.
THE COURT: Be overruled.
MR. SMITH: A lot of them have to do with fear. A lot of them have said they think the defendant or the person actually loves them. And they may but he still might get angry and do something. It doesn’t mean the crime didn’t happen.
The State — we actually have an obligation to stand up for victims that don’t won’t stand up for themselves. And I’ll submit to you, after some time, finally Shelby could stand up for herself. But the State has an obligation to file on cases like this to protect victims that need to be protected.
MS. MORRIS: Objection. Sending a message.
THE COURT: Be overruled.
MR. SMITH: So we’re following up as a branch of the State Attorney’s Office on this obligation. And that’s why we’re here today. The State did think it was worth our time to pursue this.
MS. CROY[1]: Objection; improper personal opinion.
THE COURT: You are getting close to that, Mr. Smith. So I’ll sustain that objection.
MR. SMITH: Okay. Shelby Graham is a victim and a victim in the truest *977 sense. She’s a victim of her own mental deficiencies. She’s a victim of addiction. And Andre Brinson preyed on these vulnerabilities. He used these addictions. He used these deficiencies to take advantage of Graham. And he wholeheartedly took advantage of this girl.
What gives us evidence that he took advantage of her? First of all, Brinson didn’t have a job. He wasn’t working. He comes in — testimony is he comes in and stays one night. He stays another night. Next thing you know he’s not leaving. He moved himself in — willingly moved himself in into Shelby Graham’s apartment. He’s not on the lease. She’s paying the whole rent.
Control, manipulation, all things here. She didn’t have the wherewithal to stand up for herself, to kick him out. She thought Brinson — mistakenly, she thought Brinson cared for her. She didn’t want this to happen. She probably liked Brinson. I guarantee you she liked Brinson. But Brinson used all these vulnerability to his advantage.
He moves in with her. No job. He starts siphoning off her disability check. He uses — her oum money that she gets for disability, he uses that to fuel his own crack addiction. And in the meantime gets Graham addicted to crack.
MS. CROY: Objection; facts not in evidence.
MS. MORRIS: Objection; facts not in evidence. Sorry.
MS. CROY: Sorry, Judge.
THE COURT: Objection be overruled. The Jury is going to have to rely on their own recollections of the testimony.
MR. SMITH: So we have a victim here who’s on Lithium, Prozac. She suffers from bipolar, schitzoaffective disorder, depression, I mean all these things. And here comes Brinson. Moves himself in. Exploits her. And he exploited her emotionally. Exploited her financially. And he exploited her physically on September 6th, 2013.
Tells her to get her ass home. She comes home. He gets her. Tells his friends to leave. “Get out of here. This is none of your business.” She gets out of the truck. She gets in there. He grabs her by her hair, drags her through the living room. Gets in the bedroom and pushes her, throws her down, [emphasis added]
The prosecutor’s closing remarks regarding Graham’s decision to come forward and the State’s filing decision were improper not only because .they referred to facts not in evidence, as objected to, but also because they implied that the State only charges those who are guilty, bolstered the credibility of the police witnesses, and evinced improper personal opinion of the prosecutor. For example, there were no facts in evidence to suggest that, due to fear, “domestic violence victims don’t want to go forward a lot of times.” In fact, the prosecutor’s numerous attempts to elicit such evidence throughout the trial were repeatedly objected to and the objections were all sustained, putting the prosecutor on notice that this line of questioning and argument were improper.[2]
*978 In addition, the prosecutor’s repeated remarks that this case is the reason this process exists and that the State has an “obligation” to protect victims like Graham[3] are fairly susceptible to interpretation as an attempt “to impress on the jury that the government’s vast investigatory network, apart from the orderly machinery of the trial, knows that the accused is guilty or has non-judicially reached conclusions on relevant facts which tend to show he is guilty.” Ruiz v. State, 748 So.2d 1, 4 (Fla.1999) (quoting Garza, 608 F.2d at 662); see also Johns v. State, 832 So.2d 959, 962 (Fla. 2d DCA 2002) (“An argument that the State only charges those who are guilty is improper.”). Indeed, later in the prosecutor’s closing argument, the prosecutor implied that the State had additional information not presented at trial to support its position and that the prosecutor’s prior review of the facts was superior to what was presented at trial:
But you got to remember who Sheila Debose is. She’s a four-time convicted felon. She is Andre Brinson’s aunt. She definitely has his interest at heart here, his interest — you got to consider that when you judge her credibility. She denies ever taking him to buy crack. I think it’s pretty clear they went and bought crack by the defense’s own admission when they were up here arguing. She denies that. I mean she— there’s some things here that come — that don’t scratch the surface.
[[Image here]]
Now, the State — the State doesn’t make up the facts. It takes them as they come. Now, this whole story— when it came, we took it as it came. We put the evidence — that is — we can’t make up the facts. The facts are the facts. Does — do they seem like it makes sense at that time? Maybe not. But those are the facts, [emphasis added]
By repeatedly referring to the State’s charging decision, this line of argument also suggested that the State’s decision to charge Brinson, and Officer Claudio’s testimony, should be given special credence by the jury because the State concurred with Officer Claudio’s probable cause determination following its own investigation of the case. See Garza, 608 F.2d at 665 (“This entire line of argument presumed that the whole government apparatus, and the prosecutor individually, had reached a determination of the defendant’s guilt before the trial and implied that the jury should give weight to this fact in making its determination.”); Hutchinson, 882 So.2d at 953 (“Improper bolstering occurs when the State places the prestige of the government behind the witness....”). Accordingly, the trial court abused its dis *979 cretion in denying Brinson’s repeated objections to this line of argument.[4]
The prosecutor then made argument seeking to arouse sympathy for the victim and vilifying Brinson. For example, the prosecutor remarked that Graham is a victim “in the truest sense,” “a victim of her own mental deficiencies,” and “a victim of addiction.” The dispositive issue in this case was whether the State could prove beyond a reasonable doubt that Brinson struck Graham against her will, causing great bodily harm. Nevertheless, the prosecutor repeatedly argued that Brinson “used all these vulnerability [sic] to his advantage,” and argued that Brinson “exploited” Graham emotionally, financially, and physically to fund his own crack addiction. The prosecutor continued this line of argument later in his closing:
I think the trip to the Hold-a-Cheek, it’s a great illustration of the defendant’s control and manipulation here. I mean it wasn’t his check that they’re going to get a cash advance on. It was Shelby Graham’s disability cheek that he was using her to fund his crack addiction. [emphasis added]
And again, even later:
Where did all this money go? She gets a disability check on the 3rd. Rent’s due on the 5th. They still haven’t paid rent on the 7th. The whole $900 is already gone. Shelby testified that she didn’t spend all that money. It was Brinson taking the liberty with Shelby Graham’s money to spend how he pleases. I mean he had it all figured out. He’s got a place to live that he’s not paying for. He’s got a roof over his head he’s not paying for. He’s got unlimited funds. He’s got it great, [emphasis added]
It is improper for the prosecutor to appeal to the sympathy for the victim where “the natural effect of which would be hostile emotions toward the accused.” Edwards v. State, 428 So.2d 357, 359 (Fla. 3d DCA 1983). “It is the responsibility of the prosecutor to seek a verdict based on the evidence without indulging in appeals to sympathy, bias, passion or prejudice.” Id. By explicitly stating that Brin-son took advantage of Graham’s mental vulnerabilities, and by arguing that Brin-son stole money from Graham’s disability check to fund his own crack addiction, the prosecutor improperly intended to arouse hostile emotions towards Brinson. In addition, as argued by Brinson on appeal, the prosecutor’s remarks implicitly encourage the jury to find Brinson guilty because he is a “predatory exploiter,” a “fact” that is wholly irrelevant to the charge of felony battery. Thus, although these statements were not objected to, when viewed together with the previous improper comments, the statements constituted fundamental error. See Murphy v. Int’l Robotic Sys., Inc., 766 So.2d 1010, 1036 n. 32 (Fla.2000) (Pariente, J., concurring) (“[I]f the attorney has made objections to some of the closing argument remarks, which have been overruled, the fact that all of the objectionable remarks have not been preserved by subsequent objection does not preclude the appellate court from reviewing the cumulative effect of the objected-to and unobjected-to remarks.”). These remarks were especially harmful when coupled with the State’s improper accusation that Brinson is actually responsible for Graham’s crack addiction, which was properly objected to as a fact not in evidence, but was incorrectly overruled.
At the conclusion of closing arguments, Brinson argued that the two instances when his objections were sustained war *980 ranted a mistrial. The first objection was to bolstering Graham’s credibility by referring to her lack of felony convictions, and the second objection was to improper personal opinion when the prosecutor stated, “The State did think it was worth our time to pursue this.” Brinson also recounted the additional objections that were overruled, such as when the prosecutor stated that victims normally do not come forward as a result of fear, and that “the State has an obligation to file on cases like this to protect victims that need to be protected.” The trial court denied the motion, believing that the errors did not rise to the “level of a mistrial.”
“A motion for mistrial should be granted when it is necessary to ensure that a defendant receives a fair trial.” Morton v. State, 972 So.2d 1088,1089 (Fla. 5th DCA 2008) (citing Power v. State, 605 So.2d 856 (Fla.1992)). “In order to determine whether improper remarks constitute reversible error, they should be reviewed within the context of the closing argument as a whole and considered cumulatively within the context of the entire record.” McArthur, 801 So.2d at 1040; see also Charriez, 96 So.3d at 1128 (stating that “we do find merit to Charriez’s claim that the cumulative effect of the improper comments made by the prosecutor during closing argument denied him a fair trial”); Johns, 832 So.2d at 963 (“While no one of the comments standing in isolation would have required a new trial, this court must look at the entire trial record when considering whether the comments at issue are of such a nature as to destroy the fairness of the proceeding.”).
Here, even if each error mentioned above does not require reversal by itself, we conclude that Brinson was denied a fair trial due to the cumulative effect of the prosecutor’s improper comments in both opening statements and closing arguments. In summary, during opening statements, the prosecutor improperly referred to the State’s charging decision. During closing arguments, the prosecutor bolstered the credibility of the victim by referring to facts not in evidence and repeatedly referred to the State’s charging decision, thereby mentioning additional facts not in evidence and rendering improper opinion. These errors were particularly harmful because they suggested that special weight should be given to Graham’s testimony, especially since the issue of whether Graham’s “story” was fabricated was Brinson’s primary defense at trial. In addition, the prosecutor appealed to sympathy for the victim due to her mental and physical deficiencies, argued that Brinson exploited her vulnerabilities to fund his own crack addiction, and argued that Brinson in fact caused Graham’s crack addiction, a fact wholly unsupported by the evidence. We conclude that when the properly preserved comments are combined with the unobjeeted-to acts of prose-cutorial overreaching, “the integrity of the judicial process has been compromised and the resulting convictions and sentences irreparably tainted.” Ruiz, 743 So.2d at 7. Accordingly, we find that the trial court abused its discretion in denying Brinson’s motion for mistrial, and a new trial is required. See D Ambrosio v. State, 736 So.2d 44, 48 (Fla. 5th DCA 1999).
Counsel are entitled to wide latitude in their closing arguments and may advance all legitimate arguments and draw logical inferences from the evidence. See McArthur, 801 So.2d at 1039^40. Moreover, prosecutors in specific are not limited to a robotic presentation on behalf of the State. See Diaz v. State, 797 So.2d 1286, 1287 (Fla. 4th DCA 2001). However, “[a] criminal trial is a neutral arena wherein both sides place evidence for the jury’s consideration; the role of counsel in clos *981 ing argument is to assist the jury in analyzing that evidence, not to obscure the jury’s view with personal opinion, emotion, and nonrecord evidence.” Ruiz, 743 So.2d at 4. Unfortunately, prosecutorial misconduct in closing argument is neither a new nor fading phenomenon. See, e.g., Crew v. State, 146 So.3d 101, 111 (Fla. 5th DCA 2014) (holding that “[t]he cumulative effect of the prosecutor’s comments, which as seen above are well-documented errors, denied Appellant a fair trial”); Freeman v. State, 717 So.2d 105, 106 (Fla. 5th DCA 1998) (holding that “[t]he prosecutor’s comments during closing argument collectively rise to the level of being ‘so prejudicial as to vitiate the entire trial’ ” (quoting State v. Murray, 443 So.2d 955, 956 (Fla.1984))). We remind counsel that unprofes-sionalism not only affects the parties in the immediate proceeding but adversely affects the perception of justice itself. Our profession has never been and should never devolve into a “win at all costs” mentality. If it does, we all lose.
REVERSED and REMANDED for a new trial.
EVANDER and BERGER, JJ., concur.

. Ms. Croy and Ms. Morris were Brinson's attorneys below.

. For example, the prosecutor asked Officer Claudio, "What observations have you made about domestic violence victims and their willingness to provide you information to assist in your investigation?” The trial court sustained Brinson’s objection on relevance grounds before Officer Claudio could answer.
After talking about Graham’s demeanor, the prosecutor then asked him if it is a common occurrence for alleged victims to be hesitant during domestic violence investigations. The trial court again sustained Brinson’s objection. Next, at the request of Brinson, the court instructed the jury to disregard the fol *978 lowing response by the officer: “Well, usually when you deal with domestic violence people, they’re never really forthcoming with information because they are fearful. They hesitate to — ” Finally, during his cross examination of Officer Mathyas, Brinson’s objection to the prosecutor's following question was similarly sustained: "Isn’t it true domestic violence victims often are hesitant to talk to the police?”

. There are at least three examples of this in the prosecutor’s rebuttal closing argument:
(1) "Our office — I mean there’s a reason that process exists. And that’s a — the reason is just like this”; (2) "The State — we actually have an obligation to stand up for victims that don’t won't stand up for themselves ... the State has an obligation to file on cases like this to protect victims that need to be protected”; (3) "So we’re following up as a branch of the State Attorney’s Office on this obligation. And that's why we're here today. The State did think it was worth our time to pursue this.”

. The trial court did sustain Brinson’s later objection to this line of argument.