# Supreme Court of Florida

_____

No. SC15-1816
_____

**GANGAPERSAD RAMROOP,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[March 30, 2017]

PARIENTE, J.

The conflict issue in this case is whether section 782.065, Florida Statutes

(2013),[1] creates a substantive criminal offense of attempted murder of a law

enforcement officer that includes as an essential element that the defendant knew

that the victim was a law enforcement officer.  In Ramroop v. State, 174 So. 3d

584 (Fla. 5th DCA 2015), the Fifth District Court of Appeal held that section

782.065, titled "Murder; law enforcement officer, correctional officer, correctional

probation officer," requires knowledge but is a reclassification statute that "in and

---

1.  The current version of this statute is identical to the 2013 version under
which Ramroop was tried.  See § 782.065, Fla. Stat. (2016).

of itself, is not a substantive crime." Id. at 598. Gangapersad Ramroop, who received two life sentences, including a mandatory life sentence for attempted second-degree murder of a law enforcement officer, seeks review of the Fifth District's decision on the ground that it expressly and directly conflicts with this Court's decisions in Wright v. State, 586 So. 2d 1024 (Fla. 1991), and State v. Darst, 837 So. 2d 394 (Fla. 2002), on whether the crime of attempted murder of a law enforcement officer constitutes a substantive criminal offense. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

The Fifth District correctly concluded that the jury instructions in Ramroop's trial were erroneous by not requiring the jury to find that Ramroop knew that the victim was a law enforcement officer because knowledge is an essential element of the crime defined by section 782.065. However, the Fifth District incorrectly determined that section 782.065 is a reclassification statute that does not create a separate substantive offense. We conclude that section 782.065 is a reclassification statute that creates a substantive offense and, therefore, the proper remedy for the erroneous jury instructions in Ramroop's case would have been to vacate both Ramroop's convictions—attempted second-degree murder of a law enforcement officer and first-degree felony murder of another victim, which was based on the attempted second-degree murder conviction—and remand for a new trial. Because the Fifth District incorrectly determined that section 782.065 does

not create a separate substantive offense, it improperly remanded Ramroop's case for resentencing on the lesser-included offense of attempted second-degree murder instead of ordering a new trial. Id. at 599. In doing so, the Fifth District left intact the conviction of first-degree felony murder of a separate victim, for which a life sentence was also imposed. Id. Accordingly, we quash the Fifth District's decision to the extent that it held that section 782.065 does not create a substantive offense and remand with directions to order a new trial on the charges of attempted second-degree murder of a law enforcement officer and first-degree felony murder.[2]

**BACKGROUND**

The Fifth District explained the facts underlying Ramroop's convictions as follows:

> During the early morning hours of July 4, 2013, several officers of the Orlando Police Department attempted to pull over Ramroop's vehicle for a traffic violation. A chase ensued, whereupon Ramroop ran several red lights, and allegedly shot at one of the officers involved in the pursuit, Officer Christopher Brillant. Ramroop ultimately struck another vehicle in an intersection, causing the death of the driver of that vehicle, Robert Charles John Hunter. Hunter was not wearing a seatbelt at the time of the crash, and his body was ejected from the vehicle onto the pavement. Ramroop was apprehended at the scene of the crash and subsequently charged by information with (1) attempted first-degree murder of an officer

---

2. Ramroop does not challenge and we do not address his conviction for Knowingly Discharging a Firearm from a Vehicle Within 1000 Feet of a Person. § 790.15(2), Fla. Stat. (2013).

engaged in the lawful performance of a legal duty and (2) knowingly discharging a firearm from a vehicle within 1000 feet of a person. Ramroop was also separately indicted for first-degree murder of Hunter.

Ramroop, 174 So. 3d at 587.

A grand jury indicted Ramroop of first-degree murder for unlawfully killing Robert Charles John Hunter "while engaged in the perpetration of an attempt to murder [Officer Brillant] or while escaping from the immediate scene of an attempt[] to murder [Brillant]" in violation of section 782.04(1)(a)(2). Ramroop was separately charged by information with attempted first-degree murder of a law enforcement officer in violation of sections 782.04(1)(a)(1), 777.04, 782.065, 775.087(1), 775.087(2), and 775.0823, Florida Statutes. The information alleged that the crime of attempted first-degree murder arose from a "premeditated design to effect the death of Christopher Brilliant [sic], attempt to murder Christopher Brilliant [sic], by shooting a gun at Christopher Brilliant [sic] thus creating in the mind of Christopher Brilliant [sic] a well founded fear that violence was about to take place, while Christopher Brilliant [sic], a law enforcement officer for the Orlando Police Department, was engaged in the lawful performance of a legal duty; to-wit: enforcement of the traffic laws."

At trial, the special verdict form as to the indictment listed the following offenses:

_____ WE, THE JURY, find the Defendant, guilty of First Degree Murder, as charged in the Indictment.
_____ WE, THE JURY, find the Defendant, guilty of the lesser included offense of Manslaughter.
_____ WE, THE JURY, find the Defendant, not guilty.

The special verdict form as to Count 1 of the information listed the following offenses:

_____ WE, THE JURY, find the Defendant, guilty of Attempted First Degree Murder, as charged in the Information.
_____ WE, THE JURY, find the Defendant, guilty of the lesser included offense of Attempted Second Degree Murder.
_____ WE, THE JURY, find the Defendant, guilty of the lesser included offense of Attempted Voluntary Manslaughter.
_____ WE, THE JURY, find the Defendant, guilty of the lesser included offense of Aggravated Assault on a Law Enforcement Officer.
_____ WE, THE JURY, find the Defendant, guilty of the lesser included offense of Assault.
_____ WE, THE JURY, find the Defendant, not guilty.

(Emphasis added.) The jury convicted Ramroop of the first-degree felony murder of Hunter and the lesser-included offense of attempted second-degree murder of a law enforcement officer, which served as the underlying felony for the conviction of first-degree felony murder.

As to section 782.065, the verdict form reflects that the jury made a special finding "that [the victim] was at the time of the offense a police officer for the City of Orlando in the lawful execution of his legal duties." On appeal, the Fifth District found that "the jury instruction pertaining to the jury's special finding that the victim was a law enforcement officer engaged in the performance of his duties

- 5 -

at the time of the offense failed to also require the jury to find that Ramroop had knowledge of the victim's status." Ramroop, 174 So. 3d at 586. However, the Fifth District concluded that because section 782.065 is a reclassification statute that does not create a separate substantive offense, but rather "operates solely to reclassify . . . offenses committed against law enforcement officers," reversing Ramroop's conviction of first-degree felony murder was unnecessary, and the proper remedy for the erroneous jury instructions was to vacate the jury's special finding and remand Ramroop's case for resentencing on the lesser-included offense of attempted second-degree murder without reclassification. Ramroop, 174 So. 3d at 598-99.

## ANALYSIS

The issue before us is whether section 782.065 creates a separate substantive offense. Because this is a pure question of law, our review is de novo. See Haygood v. State, 109 So. 3d 735, 739 (Fla. 2013).

The United States Supreme Court made clear in Apprendi v. New Jersey, 530 U.S. 466 (2000), that the Sixth Amendment to the United States Constitution guarantees each criminal defendant the right "to 'a jury determination [of guilt on] every element of the crime with which he is charged, beyond a reasonable doubt.' " Id. at 476-77 (quoting United States v. Gaudin, 515 U.S. 506, 510 (1995)) (citations omitted). This principle guides our analysis.

The text of section 782.065 states in full:

> Murder; law enforcement officer, correctional officer, correctional probation officer.—Notwithstanding ss. 775.082, 775.0823, 782.04, 782.051, and chapter 921, a defendant shall be sentenced to life imprisonment without eligibility for release upon findings by the trier of fact that, beyond a reasonable doubt:
>
> (1)   The defendant committed murder in the first degree in violation of s. 782.04(1) and a death sentence was not imposed; murder in the second or third degree in violation of s. 782.04(2), (3), or (4); attempted murder in the first or second degree in violation of s. 782.04(1)(a)1. or (2); or attempted felony murder in violation of s. 782.051; and
>
> (2)   The victim of any offense described in subsection (1) was a law enforcement officer, part-time law enforcement officer, auxiliary law enforcement officer, correctional officer, part-time correctional officer, auxiliary correctional officer, correctional probation officer, part-time correctional probation officer, or auxiliary correctional probation officer, as those terms are defined in s. 943.10, engaged in the lawful performance of a legal duty.

§ 782.065, Fla. Stat. (2013).

Similar to section 782.065, section 784.07, titled "Assault or battery of law enforcement officers, firefighters, emergency medical care providers, public transit employees or agents, or other specified officers: reclassification of offenses; minimum sentences," provides for reclassification "[w]henever any person is charged with knowingly committing an assault or battery upon a law enforcement officer . . . while the officer . . . is engaged in the lawful performance of his or her duties." § 784.07(2), Fla. Stat. (2016). Section 784.07 provides the lesser-included offense of aggravated assault on a law enforcement officer that was listed on the verdict form as to Count 1 of the information in Ramroop's trial.

Subsection (3) of a former version of section 784.07 eventually became what is now section 782.065. As the Fifth District explained:

> Looking beyond the plain language of the statute, we begin our analysis by reviewing the Florida Supreme Court's earlier determination of whether section 784.07(3), Florida Statutes (1993), which, as discussed below, ultimately progressed to the statute at issue, section 782.065, required knowledge of the victim's status as a law enforcement officer. In 1993, section 784.07—entitled Assault or battery of law enforcement officers, firefighters, or other specified officers; reclassification of offenses.—provided in relevant part as follows:
>
>> (2) Whenever any person is charged with knowingly committing an assault or battery upon a law enforcement officer . . . engaged in the lawful performance of his duties, the offense for which the person is charged shall be reclassified as follows:
>> . . . .
>> (3) Notwithstanding the provisions of any other section, any person who is convicted of attempted murder of a law enforcement officer engaged in the lawful performance of his duty or who is convicted of attempted murder of a law enforcement officer when the motivation for such attempt was related, all or in part, to the lawful duties of the officer, shall be guilty of a life felony, punishable as provided in s. 775.0825.
>
> § 784.07(2)-(3), Fla. Stat. (1993). As drafted, knowledge of the victim's status as a law enforcement officer was not expressly required as an element under subsection (3) to prove the attempted murder of a law enforcement officer.

Ramroop, 174 So. 3d at 592-93 (footnote omitted).

In Wright, this Court held that section 784.07 defines the "substantive offense" of battery on a law enforcement officer and "requires as an essential element proof that the victim was in fact a law enforcement officer." 586 So. 2d at

- 8 -

1030. Two years later, again reviewing section 784.07 in Thompson v. State, this Court "addressed on appeal whether the trial court erred in denying the defendant's requested jury instruction, which included knowledge of the victim's status as a law enforcement officer as an element of attempted murder of a law enforcement officer under section 784.07(3), Florida Statutes (1993)." Ramroop, 174 So. 3d at 593 (citing Thompson, 695 So. 2d 691, 691 (Fla. 1993)). This Court concluded that "knowledge of the victim's status as a law enforcement officer is a necessary element of the offense" defined in section 784.07, Florida Statutes (1993), and reversed the defendant's conviction for attempted felony murder. Thompson, 695 So. 2d at 693. Therefore, taking Wright and Thompson together, it is clear that knowledge that the victim is a law enforcement officer is an essential element of the crime defined by section 784.07. Thus, relying on our case law regarding section 784.07, the Fifth District correctly held that "section 782.065 requires knowledge of the victim's status as a law enforcement officer." Ramroop, 174 So. 3d at 597. Accordingly, for a defendant to be convicted of the offense defined in section 782.065, the jury must find beyond a reasonable doubt that the defendant knew, when the offense was committed, that the victim was a law enforcement officer. Id.; see Thompson, 695 So. 2d at 693; see also Apprendi, 530 U.S. at 476-77.

Section 782.065, which sets forth the crime of attempted murder of a law enforcement officer, is functionally the same as section 784.07, which sets forth the crime of assault and battery on a law enforcement officer, except of course that the crime is different and the penalty for violating section 782.065 is a mandatory life sentence. In Darst, we unanimously held that section 784.07 was not an enhancement statute but a reclassification statute that creates a substantive crime:

> We have for review the decision of the Fifth District Court of Appeal, Darst v. State, 816 So. 2d 680 (Fla. 5th DCA 2002), both declaring section 784.07 of the Florida Statutes (1999) to be an enhancement statute, and certifying conflict with Mills v. State, 773 So. 2d 650 (Fla. 1st DCA 2000). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
> This Court granted review in Mills, and addressed the issue presented here. See Mills v. State, 822 So. 2d 1284 (Fla. 2002). There we held section 784.07 of the Florida Statutes is a reclassification statute, not an enhancement statute, and thus creates a substantive crime. See id. at 1287. As the district court's holding is inconsistent with this Court's decision in Mills, its decision is quashed and the case is remanded to the district court for further proceedings consistent with Mills.

837 So. 2d at 395.

The Fifth District in Darst, contrary to the First District in Mills, erroneously held that section 784.07 was an enhancement statute and was created to "increase the penalties for the enumerated crimes of assault, aggravated assault, battery and aggravated battery for offenders who commit these crimes upon law enforcement officer." Darst v. State, 816 So. 2d 680, 682 (Fla. 5th DCA 2002) (quoting Merritt v. State, 712 So. 2d 384, 385 (Fla. 1998)). However, the Fifth District

- 10 -

acknowledged that "section 784.07(c) could also be interpreted as creating a substantive offense because it contains the element of knowingly committing the act of aggravated assault on a law enforcement officer." Id. at 683. The Fifth District stated that the First District's decision in Mills v. State, 773 So. 2d 650 (Fla. 1st DCA 2000), held that this same subsection actually creates a substantive offense dealing with assault or battery on a law enforcement officer. Darst, 816 So. 2d at 683.

We acknowledge that, in Merritt, we stated that section 784.07, Florida Statutes (1995), the precursor to section 782.065, "is an enhancement statute rather than a statute creating and defining any criminal offense." 712 So. 2d 384, 385 (Fla. 1998). However, that statement directly contradicts our subsequent opinion in Darst. Because our statement in Merritt was made before the United States Supreme Court opinion in Apprendi and our decision in Darst, we conclude that the statement was erroneous. Thus, to the extent that our statement in Merritt misled the Fifth District, we now clarify this issue.

In the case below, the Fifth District relied on our earlier decision in Mills, 822 So. 3d at 1287, to conclude that "section 782.065 operates as a reclassification statute" rather than an enhancement statute because it "does not 'cut across some or all criminal statutes.' " Ramroop, 174 So. 3d at 598. As we have pointed out, we held in Darst that section 784.07 of the Florida Statutes "is a reclassification

- 11 -

statute, not an enhancement statute, and thus creates a substantive crime." 837 So. 2d at 395. Therefore, the Fifth District erred when it concluded that a reclassification statute does not create a separate substantive crime because "it increase[s] a defendant's sentence beyond the maximum possible sentence of the substantive crime and is only applied following a jury's finding that the defendant violated a particular subsection of section 782.04 or 782.051." Ramroop, 174 So. 3d at 598.

The United States Supreme Court's decision in Apprendi made clear that any factual finding that increases the maximum sentence must be found by a jury beyond a reasonable doubt. 530 U.S. 466. Indeed, referring to its decision in Apprendi, the United States Supreme Court stated in Alleyne v. United States, "that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 133 S. Ct. 2151, 2155 (2013). The Supreme Court further explained:

> [I]t is impossible to dispute that facts increasing the legally prescribed floor aggravate the punishment. . . . Elevating the low-end of a sentencing range heightens the loss of liberty associated with the crime: the defendant's "expected punishment has increased as a result of the narrowed range" and "the prosecution is empowered, by invoking the mandatory minimum, to require the judge to impose a higher punishment than he might wish." Apprendi [530 U.S.] at 522, (Thomas, J., concurring). Why else would [the legislative body] link an increased mandatory minimum to a particular aggravating fact other than to heighten the consequences for that behavior? . . . This reality demonstrates that the core crime and the fact triggering the

- 12 -

mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury.

Defining facts that increase a mandatory statutory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the face of the indictment. See Apprendi, 530 U.S. at 478-479. It also preserves the historic role of the jury as an intermediary between the State and criminal defendants. See United States v. Gaudin, 515 U.S. [506,] 510-511, [(1995)] ("This right was designed 'to guard against a spirit of oppression and tyranny on the part of rulers,' and 'was from very early times insisted on by our ancestors in the parent country, as the great bulwark of their civil and political liberties' " (quoting 2 J. Story, Commentaries on the Constitution of the United States §§ 1779, 1780, pp. 540-541 (4th ed. 1873))); Williams v. Florida, 399 U.S. 78, 100, (1970) ("[T]he essential feature of a jury obviously lies in [its] interposition between the accused and his accuser"); Duncan v. Louisiana, 391 U.S. 145, 155 (1968) ("A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government").

. . . .

As noted, the essential Sixth Amendment inquiry is whether a fact is an element of the crime. When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury. It is no answer to say that the defendant could have received the same sentence with or without that fact. It is obvious, for example, that a defendant could not be convicted and sentenced for assault, if the jury only finds the facts for larceny, even if the punishments prescribed for each crime are identical. One reason is that each crime has different elements and a defendant can be convicted only if the jury has found each element of the crime of conviction.

Id. at 2161-62 (second and third emphasis added), overruling Harris v. United States, 536 U.S. 545 (2002). Therefore, the same principles that apply to treating section 784.07 as a substantive offense, requiring knowledge as an essential element, apply equally to section 782.065. Due to the knowledge requirement and

the fundamental, constitutional principles announced in <u>Apprendi</u>, a defendant may be subject to the increased sentence set forth in section 782.065 only when a jury finds beyond a reasonable doubt that the offense was committed with knowledge that the victim was a law enforcement officer. In other words, a defendant is not subject to the increased punishment under section 782.065 if he or she did not know that the victim was a law enforcement officer when he or she committed the offense. Thus, we hold that section 782.065 is a reclassification statute that creates a substantive offense, which includes knowledge as an essential element.

## PROPER REMEDY IN THIS CASE

We now turn to determine the proper remedy for the erroneous jury instructions in Ramroop's trial on an essential element of the crime of attempted murder of a law enforcement officer, charged under section 782.065. As the Fifth District stated, "because the jury was not instructed to determine whether Ramroop had knowledge of Officer Brillant's status as a law enforcement officer, his sentence for attempted second-degree murder is erroneous." <u>Ramroop</u>, 174 So. 3d at 599. The Fifth District concluded that because 782.065 was not a substantive offense, the appropriate remedy for failing to properly instruct the jury on the knowledge requirement was to reduce Ramrooop's conviction to the lesser-included offense without reclassification under section 782.065. <u>Id.</u> Ramroop

argues, however, that when a fundamentally erroneous jury instruction is given, the proper remedy is to reverse for a new trial. We agree.

This Court has "long held that fundamental error occurs in a jury instruction where the instruction pertains to a disputed element of the offense and the error is pertinent or material to what the jury must consider to convict." Haygood, 109 So. 3d at 741 (citing Delva v. State, 575 So. 2d 643, 644-45 (Fla. 1991)). As this Court explained in Reed, "[f]undamental error is not subject to harmless error review. By its very nature, fundamental error has to be considered harmful. If the error was not harmful, it would not meet our requirement for being fundamental." Id. at 369-70.

The error in the jury instructions in Ramroop's trial pertained to both attempted first-degree murder and attempted second-degree murder of a law enforcement officer. Attempted second-degree murder of a law enforcement officer, the exact crime of which Ramroop was convicted, is a lesser-included offense one degree removed from the crime of attempted first-degree murder of a law enforcement officer—the crime charged in the information. See State v. Montgomery, 39 So. 3d 252, 259 (Fla. 2010). Pursuant to our case law, because the erroneous jury instruction in Ramroop's trial pertained to an element of the crime that was necessary for the jury to convict Ramroop of the crime as charged, the jury instructions were fundamental error. Haygood, 109 So. 3d at 741; Reed,

- 15 -

837 So. 2d at 369-70 ("Fundamental error is not subject to harmless error review."). Further, because the error pertained to an offense within one degree of the crime for which Ramroop was convicted, this fundamental error is per se reversible. Montgomery, 39 So. 3d at 259; Pena v. State, 901 So. 2d 781, 787 (Fla. 2005). Therefore, we conclude that the erroneous jury instructions in Ramroop's case were fundamental error and require reversal of his conviction for attempted second-degree murder and felony first-degree murder because these convictions were interdependent.

This conclusion is further illustrated by the discrepancies within the jury instructions and verdict form that were used in Ramroop's trial. In the Introduction to Attempted Homicide, the jury instructions stated:

> In this case Gangapersad Ramroop is accused of Attempted First Degree Murder with a Firearm.
> Attempted murder in the first degree includes the lesser crimes of attempted murder in the second degree and attempted voluntary manslaughter, all of which are unlawful.
> An attempted killing that is excusable or was committed by the use of justifiable deadly force is lawful.
> If you find that there was an attempted killing of Christopher Brilliant [sic] by Gangapersad Ramroop, you will then consider the circumstances surrounding the attempted killing in deciding if it was attempted first degree murder, or attempted second degree murder, or attempted voluntary manslaughter, or whether the attempted killing was excusable or resulted from justifiable use of deadly force.

However, the explanation of "lesser included crimes or attempts" later in the jury instructions stated, "The lesser crimes indicated in the definition of Attempted First

- 16 -

Degree Murder are Attempted Second Degree Murder, Attempted Voluntary Manslaughter, Aggravated Assault and Assault." In other words, the latter explanation added additional lesser included charges of "Aggravated Assault and Assault." Ironically, the jury instructions given on the lesser-included offenses of attempted second-degree murder and aggravated assault demonstrate the error that we seek to remedy in this case.

The jury instructions on attempted second-degree murder stated:

> To prove the crime of Attempted Second Degree Murder, the State must prove the following two elements beyond a reasonable doubt:
> 1. Gangapersad Ramroop intentionally committed an act which would have resulted in the death of Christopher Brilliant [sic] except that someone prevented Gangapersad Ramroop from killing Christopher Brilliant [sic] or he failed to do so.
> 2. The act was imminently dangerous to another and demonstrating a depraved mind without regard for human life.
> . . . .
> In order to convict of Attempted Second Degree Murder, it is not necessary for the State to prove the defendant had an intent to cause death.

(Citing §§ 782.04(2), 777.04, Fla. Stat.).

Along with the jury instructions on attempted second-degree murder were the instructions on "Aggravation of a Felony Victim Law Enforcement Officer," which stated, in pertinent part:

> If you find that Gangapersad Ramroop committed the crime charged in count one of the information or any lesser included offense and you also find beyond a reasonable doubt that Christopher Brilliant

- 17 -

[sic] was a law enforcement officer in the lawful performance of a legal duty your finding should reflect that in the special verdict form.

The jury instructions on the lesser-included offense of aggravated assault on law enforcement stated:

> To prove the crime of Aggravated Assault on a Law Enforcement Officer, the State must prove the following seven elements beyond a reasonable doubt. The first three elements define assault.
> 1.  Gangapersad Ramroop intentionally and unlawfully threatened, either by word or act, to do violence to Christopher Brill[]ant.
> 2.  At the time, Gangapersad Ramroop appeared to have the ability to carry out the threat.
> 3.  The act of Gangapersad Ramroop created in the mind of Christopher Brill[]ant a well-founded fear that the violence was about to take place.
> 4.  The assault was made with a deadly weapon.
> 5.  Christopher Brill[]ant was at the time a law enforcement officer.
> 6.  Gangapersad Ramroop knew Christopher Brill[]ant was a law enforcement officer.
> "Willfully" means intentionally and purposely.

(Citing § 784.07(c), Fla. Stat.) (emphasis added).

These jury instructions make clear that aggravated assault on a law enforcement officer, which includes a knowledge requirement, is treated as a separate, substantive crime under section 784.07. Not only was it charged as a distinct crime, but, while the jury was not required to find that Ramroop knew that Officer Brillant was a law enforcement officer to convict him of the greater offense of attempted second-degree murder, the jury instructions required knowledge as an

- 18 -

element of the lesser-included offense of aggravated assault on a law enforcement officer.

Indeed, the jury's verdict reflects that they did not find any premeditation or knowledge of the victim's status on Ramroop's part <u>before</u> he committed the offense—namely discharging his firearm out of his driver's window towards Officer Brillant. The jury did not convict Ramroop of attempted first-degree murder, which would have required a finding of premeditation and intent to kill Officer Brillant. Instead, they found Ramroop guilty "of the lesser included offense of Attempted Second Degree Murder" with the aggravation that Brillant "was at the time of the offense a police officer for the City of Orlando in the lawful execution of his legal duties"—two findings that did not include knowledge as an element. Likewise, the jury did not find Ramroop guilty of the lesser-included offense of aggravated assault on a law enforcement officer, which also requires the jury to find that the defendant knew that the victim was a law enforcement officer. <u>See</u> <u>Thompson</u>, 695 So. 2d at 693.

As to the remedy for this error, the State argues that the Fifth District employed the correct remedy by remanding with instructions to impose a sentence for attempted second-degree murder, which provides for a fifteen-year sentence, rather than for attempted second-degree murder of a law enforcement officer, which carries a mandatory life sentence. We disagree. As the Second District

recently held in <u>Ortiz v. State</u>, 192 So. 3d 517 (Fla. 2d DCA 2016), a case where

the defendant argued "that the appropriate remedy . . . is a remand for entry of a

judgment finding [him] guilty of [the lesser included offense], and for resentencing

. . . for that offense" under section 924.34, Florida Statutes,[3] "the correct remedy is

to remand for a new trial on the offense charged in the information, free of the

incorrect jury instruction." <u>Ortiz</u>, 192 So. 3d at 521. Likewise, in Ramroop's case,

we conclude that the correct remedy "is to remand for a new trial on the offense

charged in the information, free of the incorrect jury instruction." <u>Id.</u>

 The State also relies on the United States Supreme Court's decision in

<u>Alleyne</u> as support for arguing that the Fifth District's remedy was appropriate.

However, because the life sentence accompanying section 782.065 is a mandatory

statutory minimum punishment, the Fifth District's remedy was inconsistent with

---

 3. Section 924.34, Florida Statutes, provides the following:

> When the appellate court determines that the evidence does not prove the offense for which the defendant was found guilty but does establish guilt of a lesser statutory degree of the offense or a lesser offense necessarily included in the offense charged, the appellate court shall reverse the judgment and direct the trial court to enter judgment for the lesser degree of the offense or for the lesser included offense.

§ 924.34, Fla. Stat. (2011); <u>see</u> <u>Sigler v. State</u>, 967 So. 2d 835, 841 (Fla. 2007) (holding that section 924.34 could be unconstitutional in application).

<u>Alleyne</u>, which clearly stated, "It is no answer to say that the defendant could have received the same sentence with or without that fact." 133 S. Ct. at 2162-63.

Thus, we conclude that Ramroop is entitled to a new trial.

**CONCLUSION**

We conclude that section 782.065 creates a separate substantive criminal offense. Therefore, the erroneous jury instructions that did not include knowledge as an essential element of attempted murder of a law enforcement officer as to section 782.065 amounted to fundamental error.[4] Accordingly, we quash the Fifth District's decision to the extent it is inconsistent with this opinion, vacate Ramroop's convictions of attempted second-degree murder and first-degree felony murder, and remand for a new trial on these charges.[5]

It is so ordered.

LABARGA, C.J., and LEWIS, QUINCE, and LAWSON, JJ., concur.
CANADY and POLSTON, JJ., concur in result.

---

4. The Standard Jury Instructions should be amended to treat the crime of Murder or Attempted Murder of a Law Enforcement Officer in a manner similar to Assault or Battery on a Law Enforcement Officer. <u>See</u> Fla. Std. Jury Instr. 6.4 (Attempted Second Degree Murder); Fla. Std. Jury Instr. 8.10, 8.11, 8.12, 8.13; <u>see also</u> In re Std. Jury Instrs. in Crim. Cases—Report No. 2013-03, 146 So. 3d 1110, 1110 (Fla. 2014); <u>In re Std. Jury Instrs. in Crim. Cases—Report No. 2013-02</u>, 137 So. 3d 995, 995 (Fla. 2014).

5. Because this issue is dispositive, we leave undisturbed the other issues discussed in the Fifth District's opinion and decline to address the other issues raised by Ramroop.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

Fifth District - Case No. 5D14-1359

(Orange County)

William R. Ponall of Ponall Law, Maitland, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; and Wesley Heidt, Bureau Chief, and Andrea K. Totten, Assistant Attorney General, Daytona Beach, Florida,

for Respondent